On motion to dismiss appeal, decided July 8, 1913.

On the merits, argued January 15, decided January 27, 1914.

## STATE *v.* GODDARD.*

(133 Pac. 90; 138 Pac. 243).

**Criminal Law—Appeal—Decisions Reviewable—Effect of Parole.**

1.  Under Section 1586, L. O. L., providing that when any adult person not previously convicted of a felony shall be convicted of any felony or misdemeanor, the maximum punishment of which does not exceed ten years' imprisonment, or in the case of a minor 20 years' imprisonment, the court may in its discretion parole such person under the supervision of the court or of any prisoners' aid society, and Section 1589, providing that when any prisoner fails to observe all the conditions and requirements of the parole and order of the court, or shall again be convicted of a felony, the parole shall be revoked, and the prisoner committed to the penitentiary to serve out the original sentence to be counted from the day of his delivery to the warden of the penitentiary, a provision in a judgment of conviction paroling defendant on condition that he would not leave the jurisdiction of the court, violate the laws of the United States, this state, or any municipality, would at all times lead an honorable and upright life and report once a month to the presiding judge his whereabouts, with such other information as might be desired or demanded by the judge, did not defeat such defendant's right to appeal where he had not requested such parole and had not by any affirmative act accepted the conditions imposed.

**Criminal Law—Evidence—Records—Entries in Family Bible.**

2.  Section 727, Subsection 4, L. O. L., provides that evidence may be given of the declaration of a deceased person as to the relationship, birth, marriage, or death of any person related to the deceased person. Subsection 13 authorizes admission of evidence of entries in family Bibles as evidence of pedigree. Section 715 provides that in the construction of a statute the office of a judge is simply to declare its terms, not to insert what is omitted, or omit what has been inserted, and when there are several provisions, such construction is, if possible, to be adopted as will give effect to all. Section 716 provides that a particular provision or intent controls a general one. *Held,* in a prosecution for statutory rape, that an entry in the family Bible is admissible to show the age of the prosecutrix, regardless of its authorship, or whether the person who wrote it is dead.

[As to evidence of age, see note in 111 Am. St. Rep. 583. As to admissibility of entry in family Bible to show age where person making entry is dead or unknown, see note in Ann. Cas. 1912A, 1218.]

---

*As to the admissibility in evidence, generally, of entries in family Bible or other religious book, see note in 41 L. R. A. 449.

                                                              REPORTER.

Criminal Law—Trial—Reception of Evidence—Objections.

3. As a general rule, an objection to evidence as "incompetent, irrelevant, and immaterial" is not sufficiently specific to raise any question, and the. objector should indicate the particular point to be raised.

Indictment and Information—Issues and Proofs—General Rule.

4. The defendant, in a criminal action, can be convicted only of the crime charged in the indictment, excepting that, under Sections 1551, 1552, L. O. L., when the crime consists of several degrees the jury may find the defendant guilty of the crime charged, or any inferior degree, or of an attempt, or of any crime included in that charged.

Indictment and Information—Time of Offense.

5. Though the defense includes an alibi, time is not a material ingredient of the offense of statutory rape, within Section 1443, L. O. L., providing that the precise time a crime was committed need not be stated in the indictment, except when time is a material ingredient of the crime.

Indictment and Information—Issues and Proof—Time of Offense.

6. In a prosecution for statutory rape, where the state, at the beginning of the trial, elected to try defendant for an act committed at the Oxford Hotel in the City of Portland, evidence of a single offense at that place on a Wednesday night near the end of April, or beginning of May, was sufficiently definite, though the indictment charged the act to have been committed on May 15th and one of the defenses was an alibi, and evidence of another similar act at a different place was introduced to show the relations between the parties.

Criminal Law—Appeal—Instructions—Sufficiency.

7. In a prosecution for statutory rape where the court elected to try defendant for an act at a particular place, instructions, requiring proof that defendant had sexual intercourse with prosecutrix at the place in question, when she was under the age of 16, near the date stated in the indictment, but not necessarily on the exact date, but the particular transaction being very material, were not ground for reversal under Section 1026, L. O. L., providing that after appeal the court must give judgment without regard to questions in the discretion of the court below, or to technical errors, defects or exceptions which do not affect the substantial rights of the parties.

ON MOTION TO DISMISS APPEAL.

From Multnomah: JAMES U. CAMPBELL, Judge.

Statement by MR. CHIEF JUSTICE MCBRIDE.

The defendant, John B. Goddard, was indicted for the crime of rape, and upon trial was convicted by a jury who recommended him to the mercy of the court. The court thereupon sentenced him to the penitentiary

for a period of 20 years, and in the same judgment paroled him; the parole condition being as follows: "The court taking into consideration the recommendation of the jury that the defendant be paroled, it is ordered that the sentence in this cause be suspended, and the defendant is allowed to go at large on parole, on conditions that he will not leave the jurisdiction of this court, and that he will not violate the laws of the United States or of this state or of any municipality in which he may live, and that he will at all times lead an honorable and upright life, and that he shall report in person or writing once a month to the presiding judge of this court his whereabouts with such other and additional information as may be desired or demanded by said judge."

Section 1589, L. O. L., is as follows: "If any prisoner when required shall fail to give such bail, bond, or security, or shall fail to observe all and every of the conditions and requirements of said parole and order of said court, or shall be again convicted of a felony, then said parole shall be by order of said court revoked with or without notice to such prisoner, and said prisoner shall be committed to the penitentiary to serve out the original sentence imposed in the same manner as though said parole had not been granted. The clerk shall deliver to the sheriff a certified copy of the sentence, together with a certificate that such person had been paroled and his parole has been terminated, and the sheriff shall, upon the receipt of such certified copy of sentence, immediately arrest such person and transport and deliver him or her to the warden of the penitentiary, and the time such person shall have been at large upon parole shall not be counted as part of the sentence, but the time of sentence shall be counted from the day of delivery to the warden of the penitentiary."

Nothing appears to indicate that the defendant requested a parole, nor is any request or acceptance provided for in Section 1586, L. O. L., which is as follows: ''When any adult person who has not previously been convicted of a felony shall be convicted in any Circuit Court of this state of any felony or misdemeanor, the maximum punishment of which does not exceed ten years' imprisonment in the penitentiary, or any minor person who has not previously been convicted of a felony shall be convicted in any Circuit Court of this state of any felony or misdemeanor, the maximum punishment of which does not exceed twenty years' imprisonment in the penitentiary, and sentence shall have been pronounced, the court before whom the conviction shall have been had, if satisfied that such person, if permitted to go at large, would not again violate the law, may, in its discretion, by order of record, parole such person and permit him or her to go and remain at large under the supervision of the court, or under the supervision of any prisoners' aid society now organized or hereafter to be organized under the laws of the State of Oregon, subject always, however, to the order of such court as such court may deem best until such parole shall be terminated as hereinafter provided, but such court shall have no power to parole any person after he or she has been delivered to the warden of the penitentiary or where it shall be made to appear to said court before such parole shall have been granted that such person has been before convicted of a felony.''

The defendant appealed from the judgment, and a motion is now made to dismiss the appeal on the ground that by accepting the parole he has waived his right of appeal.          MOTION DENIED.

*Mr. W. D. Evans,* District Attorney, and *Mr. George J. Cameron,* for the motion.

*Messrs. King & Saxton* and *Mr. Jay Bowerman, contra.*

Opinion by MR. CHIEF JUSTICE McBRIDE.

1. Beyond the fact that the defendant has not attempted to break into the penitentiary *vi et armis,* there is nothing to indicate that he has accepted the parole. It was made a part of the judgment, and its conditions in themselves constitute a semi-imprisonment. The defendant may not leave the jurisdiction of the court; he must report his whereabouts to the judge every month; he must submit to the judgment of the court as to his conduct; and he must obey strictly every municipal ordinance of any town in which he resides, and all these under penalty of having his parole revoked and being imprisoned for 20 years in case he violates a single one of the conditions. All these conditions constitute a very serious abridgment of the liberty of a citizen; and, until it is shown that he has accepted them affirmatively, we think that he should not be held to have waived his right of appeal. Had he affirmatively accepted the conditions imposed, a different question would arise; but, under the circumstances, he was *inter canem et lupum.* Had he accepted by matter of record the parole given him, he would probably have been held to have waived his right of appeal. Had he voluntarily insisted that he be received into the penitentiary, his request would probably have been refused, and the fact that he had so insisted might with equal plausibility have been urged as a waiver of his right of appeal.

2. A parole by the court is not and cannot be a conditional pardon. Under Article V, Section 14, of the

Constitution, the pardoning power is vested in the Governor. It is a power with which courts have nothing to do. This also marks the distinction between the case at bar and the case of *Odom* v. *State,* 8 Okl. Cr. 540 (129 Pac. 445), which arose upon parole granted by the Governor, and not upon one constituting a part of the original judgment. To adopt the theory of that state in this case would place it in the power of any judge to prevent an appeal by paroling the prisoner. While in most instances it transpires that only guilty men are convicted by juries, yet, so long as appeals are permitted at all, the right to appeal should be open to anyone who does not waive it by some affirmative act.

The motion to dismiss is overruled.

MOTION OVERRULED.

---

Decided January 27, 1914.

ON THE MERITS.

(138 Pac. 243.)

The defendant, John B. Goddard, was convicted of statutory rape, and sentenced to imprisonment in the penitentiary for a term of from 3 to 20 years, and was paroled on the recommendation of the jury, and he appeals.                                      AFFIRMED.

For appellant there was a brief, with oral arguments by *Mr. Will R. King* and *Mr. Jay Bowerman.*

For the State there was a brief over the names of *Mr. Walter H. Evans,* District Attorney, *Mr. Arthur A. Murphy,* Deputy District Attorney, and *Mr. Andrew M. Crawford,* Attorney General, with an oral argument by *Mr. Murphy.*

MR. JUSTICE RAMSEY delivered the opinion of the court.

The indictment charges that the defendant committed the crime of rape on the 15th day of May, 1911, by having sexual intercourse with one Nettie Poag, a female child under the age of 16 years.

1. The first point assigned by the appellant for reversal is that the court below erred in admitting in evidence the record of the date of the birth of Nettie Poag, contained in the family Bible of her family. Mrs. Clara E. Poag, her mother, testified that Nettie was 16 years old on June 19, 1911, and Nettie also testified that she was 16 years old on that date.

2. Mrs. Clara E. Poag testified that she had a record of the date of the birth of Nettie in their family Bible. She testified that the book, by her produced, was their family Bible, and that it contained a record of the ages of their children. She stated that the said family Bible contained a record of the date of the birth of Nettie and that this entry stated that she was born "June 19, 1895." She testified, also, that the family record in said Bible was written by her husband before they left Condon, but that the entries were not made at the time the children were born, and that said entries were made six years or longer ago. The entries were all made in the Bible at the same time by her husband, and that she saw him write them. The record of the date of the birth of Nettie Poag, as entered in said family Bible, was offered in evidence, and the counsel for the defense objected to its admission for the reason that it "is incompetent, irrelevant, and immaterial." It is a general rule that an objection to evidence on the ground that it is "incompetent, irrelevant, and immaterial" is not sufficiently specific to raise any question for decision. The objector should lay his finger on the particular point

intended to be raised, so that the trial court will have notice of the *precise* point: See on this point, Elliott, Ev., § 883; 8 Ency. of Pl. & Pr., pp. 218–226; *Oregon R. & N.* v. *Eastlack,* 54 Or. 203 (102 Pac. 1011, 20 Ann. Cas. 692); *Rice* v. *Waddill,* 168 Mo. 99 (67 S. W. 605); *Merchants' Sav. Bk.* v. *Harding,* 65 Kan. 655 (70 Pac. 655).

There are some exceptions to this rule, and we will assume that the objection to the family record contained in the family Bible was sufficiently specific to raise the question of its admissibility. The Bible was sufficiently identified as the family Bible of the parents of Nettie Poag and their children, and it is shown that the entries in it were written by her father in the presence of her mother. It contained a statement of the names of the parents, the date of their marriage, the names of each of their seven children, the dates of their respective births, the fact that two of them were twins, and the name of the little boy that died, and the date of his death. Section 727, L. O. L., provides as follows: "In conformity with the preceding provisions, evidence may be given, on the trial, of the following facts: * * 4. The declaration or act, verbal or written, of a deceased person in respect to the relationship, birth, marriage, or death of any person related by blood or marriage, to such deceased person; the declaration or act of a deceased person, made or done against his interest in respect to his real property; and also the declaration or act of a dying person, made or done under a sense of impending death, respecting the cause of his death. * * 13. Monuments and inscriptions in public places as evidence of common reputation, *and entries in family Bibles or other family books or charts, engravings on rings, family portraits,* and the like as *evidence of pedigree.*" Subsections 4 and 13 provide for different kinds of evi-

dence in relation to family matters. Subsection 4 relates to declarations or acts of persons, whether verbal or written. These declarations may have been made in conversations, in letters or other writings, whether formal or informal, relating to family matters; but these declarations are not admissible as evidence, unless the member of the family making them is deceased. Subsection 13 makes entries in *family Bibles or other family books* or charts or engravings on rings, family portraits *and the like,* admissible as evidence of pedigree. Entries in Bibles or books that are not *family* Bibles or *family* books are not admissible. Entries in family Bibles or family books are made, by this statute, admissible because they are entries in *family* Bibles or *family* books. Their admission is not made *conditional* on the death of the party who entered them. If the legislature had intended that their admissibility should be *conditional* on the decease of the person who made the entries, it would have expressed that condition in the law. Subsection 4 makes the declarations there mentioned admissible only when the person who made them is deceased, but Subsection 13 does *not* provide that entries made in a family Bible shall be admissible only when made by a person subsequently deceased. If the legislature had intended or desired to make entries in family Bibles or family books admissible as evidence only when the person making the entries was deceased, it would have been an easy matter to have so provided. A court has no right to read into Subsection 13 a condition the law-making power did not intend should be there. If entries in a family Bible are held to be admissible only when the person who made them, is dead, then Subsection 13 was entirely useless, as to statements concerning pedigree, because such entries, when the person making them is a relative and de-

ceased, are admissible under Subsection 4. If Mrs. and Mr. Poag, instead of entering their family record in their family Bible, had entered it in a Bible or book that did not belong to their family, such entries would not have been admissible under Subsection 13, because the book in which the record was entered was not *their family* Bible or *their family* book. Such books are treasures of the family, and are accessible to the members thereof, and it is not probable that false entries would be made or retained in such books.

Section 715, L. O. L., is as follows:

"In the construction of a statute * * the office of a judge is simply to ascertain and declare what is, in terms or in substance, contained therein, *not to insert what has been omitted,* or to omit what has been inserted; and where there are several provisions or particulars, such construction is, if possible, to be adopted as will give effect to all."

Section 716, L. O. L., is as follows:

"In the construction of a statute the intention of the legislature * * is to be pursued, if possible; and when a general and a particular provision are inconsistent, the latter is paramount to the former. So *a particular intent shall control a general one* that is inconsistent with it."

Subsection 13 is a *particular* provision relating to the admission of entries in family Bibles, and is paramount in relation to that matter. It displaces the common-law rule on that subject in so far as it is inconsistent with the common law. So far as we are advised, all of the cases cited by the counsel for the defendant upon this point, excepting the case from California, are from states that have no such statutory provision as Section 727, subsection 13. The decisions in California are conflicting. Their statute is similar to ours.

In *People* v. *Ratz,* 115 Cal. 134 (46 Pac. 916), (a case like this), the court says:

"The mother, when on the witness-stand, was shown a book, and testified that it was hers, and that it was her family Bible; that it contained the record of the family. This book contained, among other entries, the name of the child, and the date of her birth. The mother testified that it was correct. Objection was made to the introduction of the record, by the defendant, upon the ground that it appeared that the record was in English; that the mother did not know how to read or write English, and could not tell whether or not the record was correct."

Passing on this objection, the court says: "*The admissibility of the book did not depend on the proof of the handwriting or the authorship of the entries. It depended on proof of the fact that it was the family Bible,* which evidence was afforded by the testimony of the mother. As is said in *Hubbard* v. *Lees,* L. R. 1 Ex. 255: 'To require evidence of the handwriting or authorship of the entries [in a family Bible] is to mistake the distinctive character of the evidence, for it derives its weight, *not from the fact that the entries are made by any particular person, but that, being in that place* (in the family Bible) *they are to be taken as assented to by those in whose custody the book has been.*' " The court held the entries in the family Bible to be admissible.

In *People* v. *Slater,* 119 Cal. 623 (51 Pac. 958), where both parents of the girl testified as to her age, the court held that the entry in the family Bible as to the date of the girl's birth was properly admitted in evidence, saying: "The family Bible was properly admitted in evidence. The condition of the entry of the girl's birth required explanation, and the entry and the explanation were properly submitted to the jury."

. In *People* v. *Mayne,* 118 Cal. 516 (50 Pac. 654, 62 Am. St. Rep. 256), the court held that an entry of the date of the birth of a person in the family Bible was not admissible on the ground that such an entry was merely a declaration of the person who made it, and that it was hearsay evidence, etc. The court in this case seems to have taken no notice of the ruling in favor of the admission of such evidence made by the same court in *People* v. *Ratz,* 115 Cal. 134 (46 Pac. 915), cited *supra.* The case of *People* v. *Slater,* 119 Cal. 623 (51 Pac. 957), holding that the family Bible *is* admissible to prove the date of the birth of a person (whether the person who made the entry is a relative or not), was decided *after People* v. *Mayne* was determined, and is the *latest* ruling in that state on that question.. The syllabus of the case of *Hubbard* v. *Lees,* L. R. 1 Ex. 255, a case decided by the Court of Exchequer in 1866, is as follows: "Entries of pedigree in a family Bible or testament, which is produced from the proper custody, are admissible as evidence, *without proof of their handwriting or authorship.*"

In *Hall* v. *Cardell,* 111 Iowa, 208 (82 N. W. 504), the court says:

"Plaintiff's father testified that she was born March 19, 1872, and he produced a leaf from the family Bible that gave that as the date of her birth. It is said that the father's testimony is based on the entry in the Bible, and that entry is not admissible, because not made at the time of the birth of the child, and for the further reason that the entries thereon were copied from a large book into the one from which the leaves were cut. The record does not sustain this assumption. John Hall, the father, testified positively and without equivocation to the date of the birth, and his testimony is not disputed. Concede, for the purpose of the case, that leaves torn from the Bible were inadmissible, yet there is no doubt as to the time of the

plaintiff's birth. We may say, however, *that the leaves were admissible;* their weight to be determined by the court.''

In *Union Central Life Ins. Co.* v. *Pollard,* 94 Va. 155 (26 S. E. 423, 64 Am. St. Rep. 715, 36 L. R. A. 271), the court says:

''The defendant in making its defense sought to show that one or more of the material statements made by the insured in his application were false and fraudulent. To do this it offered in evidence the family Bible of the insured, and read to the jury an entry which tended to prove that he was born on the 8th day of May, 1838, instead of May 8, 1839, as stated in his application for the policy sued on. Although it appeared that the entry read to the jury as to the date of his birth was made by a person who was not a member of his family, it was admissible evidence, and tended to prove the date of the birth of the insured. The admissibility of an entry in a family Bible does not depend upon the handwriting or authorship of the entry, *but upon the fact that it is in the family Bible. It is of the nature of a record, and, being produced from the proper custody, is itself evidence.* The reason why it is admissible, although the handwriting be unknown or made by others than the family, * * where all have access to it, the presumption is that the entry would not be permitted to remain if the whole family did not adopt it, and thereby give authenticity to it.''

In *Jones* v. *Jones,* 45 Md. 159, 160, the court says:

''The eighth prayer of the appellants was rightly rejected. It did not require the jury to find what was essential to be found, namely, that the Bible from which the entries were taken was the family Bible of Andrew D. Jones, and had been in his possession as such. That the book was found in the intestate's house, after his death, in the possession of his administratrix, is no evidence that the deceased ever

saw it. On questions of marriages, births, death, etc., entries in a family Bible or testament are admissible, even without proof that they had been made by a relative, *provided the book is produced from the proper custody.* Proof of the handwriting or authorship of the entries is not required, when the book is shown to have been the family Bible or testament, for then the entries, as evidence, derive their weight, not from the fact that they were made by any particular person, but that, being in that place, as a family registry, they are to be taken as assented to by those in whose custody the book has been kept.''

In *Weaver* v. *Leiman,* 52 Md. 719, the court says:

''The authorities show that entries in a family Bible or testament are admissible in evidence, even without proof that they had been made by a parent or relative; for as this book is the ordinary register of families, and is usually accessible to all its members, the presumption is that the whole family had more or less adopted the entries contained in it, and thereby given authenticity.''

Counsel for the defendant refers to cases in Texas, Kansas, Kentucky, and Louisiana which hold that the entries in a family Bible, as to matters of pedigree, are not admissible, excepting when they have been made by relatives and the persons making them have been shown to be dead. But Subsection 13 of Section 727, L. O. L., expressly provides that entries from family Bibles are admissible to prove matters of pedigree. The entries are admissible because they are parts of family Bibles. When a book is shown to be a family Bible, and to contain a family record, and to have been kept in the family, the entries of the pedigrees of the members of the family are admissible as to dates of births, marriages, etc. Mrs. Poag testified, without objection, that the entry in the Bible, concerning the birth of Nettie, was as follows: ''Nettie

J. Poag, born June the 19th, 1895.'' This is the entry that the state offered, and the bill of exceptions, on page 20, shows that, in answer to a question by the district attorney, she stated the contents of said entry. This was not objected to. As the contents of this entry were before the jury, by oral evidence of Mrs. Poag, the admission of the book, containing the entry, would seem to be hardly material, or to have added anything to the evidence. There was no error in admitting the family Bible in this case as evidence, tending to prove the date of the birth of Nettie Poag.

3. The defendant claims that, in criminal cases, where the defense is an *alibi,* and the defendant meets the charge with evidence tending to show that it was impossible for him to have committed the crime charged, the jury ought not to be permitted to find the defendant guilty, because it believes from the evidence that he did, in fact, commit *some other* criminal act of a similar nature to that charged. The defendant in a criminal action can be convicted only of the crime charged in the indictment, excepting that, when the crime consists of different degrees, the jury may find the defendant guilty of the crime charged in the indictment, or of any degree of that crime inferior thereto, or of an attempt to commit the crime charged, or any inferior degree thereof: Sections 1551, 1552, L. O. L.

4. In this case the defendant is charged with committing the crime of rape on a girl under the age of 16 years. This crime is charged to have been committed on May 15, 1911. The particular date charged is immaterial. A defendant cannot make the precise date charged in the indictment material by giving notice that his defense includes an *alibi.* Section 1443, L. O. L., is as follows: ''The precise time at which the crime was committed need not be stated in the in-

dictment, but it may be alleged to have been committed at any time before the finding thereof, and within the time in which an action may be commenced therefor, *except when the time is a material ingredient in the crime.*" Time is not a material ingredient of the crime charged in this case. In cases where indictments are found for selling intoxicating liquors on Sundays, or on the day on which state elections are held, time is a material ingredient of the crime charged, and the indictment must charge, and the proof must show, that those crimes were committed on Sundays or on election days, as the case may be. The evidence in this case tended to prove that the crime charged was not committed on May 15, 1911, but that it was committed at the Oxford Hotel in the City of Portland, about 11 o'clock at night, on a Wednesday, in the latter part of April or the first of May. While Nettie Poag testified that the defendant had sexual intercourse with her twice, and only twice (once at the defendant's office and the other time at the Oxford Hotel), the prosecution gave notice, at the beginning of the trial, that the charge upon which the state intended to try the defendant was the act of sexual intercourse that occurred at the Oxford Hotel in the City of Portland. Only one act of that kind occurred there, and, according to the evidence, it occurred late at night on a Wednesday, either near the end of April or the beginning of May, 1911. The place where the crime was committed was fixed with certainty, and the time of its commission was proved with sufficient definiteness. While the prosecution produced evidence that a similar act was committed at the defendant's office, this evidence was given to show the relations between the parties, but the state expressly elected, before the trial began, to try the defendant for the act that was committed at the Ox-

ford Hotel. It was shown by the state that only one such act was committed there.

The defendant cites and relies upon the cases of *State* v. *Coss,* 53 Or. 462 (101 Pac. 193), and *State* v. *King,* 50 Wash. 312 (97 Pac. 247, 16 Ann. Cas. 322), on this point, as to the materiality of the time of the commission of the crime, but, when carefully examined, neither of the cases is inconsistent with the ruling of the court below in this case. In *State* v. *Coss,* 53 Or. 462 (101 Pac. 193), the court says:

"In criminal prosecutions the date upon which the crime is alleged to have been committed is immaterial, and it is sufficient if it is shown to have been committed at any time within the statute of limitations; but when in prosecutions of this character (rape) the defendant attempts to prove an *alibi,* or give evidence of facts tending to show that it was impossible for him to have committed the act with which he is charged and is on trial, it is error for the court to instruct the jury that the date is immaterial, and that it is sufficient if the defendant committed the crime at any time within the statute. While the prosecution is not required or compelled to prove that the crime was committed on the date alleged in the indictment, it is required to prove some particular act constituting the crime and to rely upon that for a conviction. If it selects some particular act, and the defendant meets the charge with evidence tending to show that it was impossible for him to have committed said act, the jury ought not to be permitted to find the defendant guilty, because it may believe, from the evidence, *that he did,* in fact, *commit some other criminal act of a similar nature to that charged.*"

The latter part of the quotation states the rule correctly, applying to a case of this kind, The state is required to prove some particular act constituting the crime for which the defendant is on trial, and if it fails to prove the particular act relied upon, the jury

has no right to find the defendant guilty of some other act similar to the one the state selected as the offense for which defendant was to be tried. The exact date of the offense need not be proved. In *State* v. *King,* 50 Wash. 312 (97 Pac. 247, 16 Ann. Cas. 322), the defendant was charged with the crime of obtaining money under false pretenses, and the evidence showed that the crime was committed between the 12th and the 15th of February, 1907. The defendant claimed an *alibi.* The trial court instructed the jury that the exact date was immaterial, and that it made no difference, so far as the crime was concerned, "if the defendant committed the crime as charged at any time within the period of three years prior to the time the information was filed." On appeal the court says: "The witness for the state *had fixed the date* when the crime was committed as being between the 12th and the 15th day of February, 1907. The defense was that the defendant was not the person who obtained the money, and that he was sick at home, unable to leave his room between those dates. The time of the commission of the crime was clearly material. There are many cases where no issue is based upon the time when the crime was committed. In such cases this instruction would be correct, but was misleading and erroneous in this case, *because the time was definitely fixed by the state, and the defense of an alibi was based upon that time.*" That holding was based upon the fact that the state *had fixed the date of the commission of the crime definitely.* In this case the state did not fix the date of the commission of the crime definitely, and hence said ruling is not in point.

In *People* v. *Williams,* 133 Cal. 169 (65 Pac. 325) (a rape case), the court says:

"I think the prosecuting officer, when he commences the trial of a case of this class, where he is at liberty

to prove one of several different offenses under the indictment, should, at least as early as the commencement of the trial, inform the defense upon proof of what specific offense he intends to rely, and, if he does not, the first evidence which would tend in any degree to prove an offense shall be deemed an election, and, unless the precise offense is proven, the defendant is entitled to an acquittal.''

5, 6. The defendant excepted to the following charge given to the jury: ''The law is, gentlemen, if the defendant had sexual intercourse with the girl, Nettie Poag, and in addition to that, at the time of the act, she was under the age of 16 years, why, then, he would be guilty of the crime charged. It is necessary, therefore, for the state to prove to you, by the character of testimony I shall hereinafter indicate, beyond a reasonable doubt, that all of the elements going to make up the crime charged existed at the time the crime is alleged to have been committed, or near the time the crime is alleged to have been committed, the particular date not being material, *but the particular transaction being very material, and being absolutely material in this kind of a case.* Of course, it would make no difference, as far as the guilt of the defendant is concerned, if he had had sexual intercourse with her at many other times and different places. *But it is incumbent upon the state to prove that he had sexual intercourse with this girl, Nettie Poag, at the Oxford Hotel in this county and in this state some time near the time alleged in the indictment, and that at the specified time she was under the age of 16 years. These are the elements going to make up the charge in this indictment, which they must prove to you beyond a reasonable doubt.''* The charge required the state to prove to the jury, beyond a reasonable doubt, the following necessary elements, before the jury could

find the defendant guilty: (a) That the defendant had sexual intercourse with Nettie Poag in Multnomah County, State of Oregon; (b) that Nettie ,Poag was, at the time of the sexual act, under 16 years of age; (c) that this act was committed some time near the *time alleged in the indictment,* but . that it was not necessary that the proof should show that the act was committed on the exact date stated in the indictment, but it must have occurred while she was under 16 years of age, etc. This charge restricts the jury to *the act at the Oxford Hotel,* and instructed them that the proof must show that the girl was at the time under 16 years of age. All the proof for the state showed that she became 16 years of age on June 19, 1911. As the act was committed about the end of April or the beginning of May, 1911, only about six weeks intervened between the date of the act and her arrival at the age of 16. The charge of the court required the jury, in effect, to acquit the defendant, unless they were satisfied from the evidence, beyond a reasonable doubt, that the defendant had committed said act at the Oxford Hotel before June 19, 1911, (the time when the girl became 16), and it prohibited the jury's finding the defendant guilty of any crime excepting the one committed at the Oxford Hotel. Taking the charge of the trial court as a whole, we think it submitted the case to the jury fairly and properly. Section 1626, L. O. L., is as follows: "After hearing .the appeal (in a criminal case) the court must give judgment, without regard to the decisions of questions which were in the discretion of the court below, or to technical errors, defects, or exceptions *which do not affect the substantial rights of the parties."*

We find no reversible error in the record, and the judgment of the court below is affirmed.    AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE BURNETT concur.