Argued December 10, affirmed December 24, 1958

## EACRET ET UX *v.* HOLMES
### 333 P. 2d 741

*Walter D. Nunley,* Medford, argued the cause and filed a brief for appellant.

*Peter S. Herman,* Assistant Attorney General for Oregon, Salem, argued the cause for respondent. With him on the brief was Robert Y. Thornton, Attorney General for Oregon.

LUSK, J.

Plaintiffs are the parents of Alvin William Eacret, deceased, who was murdered by one Billy Junior Nunn. Nunn was convicted of the murder and sentenced to death. His conviction was affirmed by this court, *State v. Nunn*, 212 Or 546, 321 P2d 356.

The defendant is Robert D. Holmes, Governor of the State of Oregon.

Plaintiffs filed this suit for the purpose of obtaining a declaratory judgment limiting and guiding the Governor in the exercise of the power granted to him by Article V, § 14 of the Oregon Constitution, which reads:

> "He shall have power to grant reprieves, commutations, and pardons, after conviction, for all offenses except treason, subject to such regulations as may be provided by law. Upon conviction for treason, he shall have power to suspend the execution of the sentence until the case shall be reported to the legislative assembly, at its next meeting, when the legislative assembly shall either grant a pardon, commute the sentence, direct the execution of the sentence, or grant a further reprieve. He shall have power to remit fines and forfeitures, under such regulations as may be prescribed by law; and shall report to the legislative assembly, at its next meeting, each case of reprieve, commutation, or pardon granted, and the reasons for granting the same; and also the names of all persons in whose favor remission of fines and forfeitures shall have been made, and the several amounts remitted."

The circuit court sustained a demurrer to the complaint and entered an order of dismissal. The plaintiffs have appealed.

The allegations of the complaint are to this effect: The defendant has in similar cases commuted death sentences because of his conscientious scruples, to which he has given public expression, against capital punishment. The defendant publicly stated at the time of the affirmance of the conviction of Nunn by this court that he would immediately begin to consider the commutation of the death sentence of Nunn. He will commute such sentence unless restrained from doing so. The plaintiffs claim the protection of various provisions of the State and Federal constitutions which, it is alleged, will be violated if the threatened action of the defendant is not restrained. The prayer is for a temporary order restraining the defendant from commuting Nunn's sentence until the final determination of this suit, and for a declaration by the court which in substance would inform the Governor that he must not exercise his power to commute a sentence of death because of his conviction that the death penalty is wrong, but that his discretion in the exercise of such power must be guided solely by considerations of justice in the particular case. There was no prayer for an order permanently enjoining the defendant from commuting the sentence of Billy Junior Nunn.

■ It must be at once apparent that the plaintiffs have no standing to maintain this suit. The wrong of which they complain—if there be a wrong—is public in character. The complaint discloses no special injury affecting the plaintiffs differently from other citizens. The fact that it was their son for whose murder Nunn has been sentenced to die does not alter the case, even though it be natural that they should feel more deeply upon the subject than other members of the general public. Punishment for crime is not a matter of

private vengeance, but of public policy. Any violation of constitutional rights which might be supposed to flow from what is asserted to be an "unconstitutional" exercise by the executive of the pardoning power would affect equally all the people of the state, rather than the plaintiffs in a different and special way. The principles governing the question are well established, and may be found clearly stated in *Putnam v. Norblad*, 134 Or 433, 293 P 940.

For these and other reasons the complaint fails to disclose a justiciable controversy under the declaratory judgments law. ORS 28.010 et seq. No right, status, or legal relation of the plaintiffs is involved, and no legal interest of theirs will be affected by the action of the Governor. There is no case for declaratory relief where the "plaintiff seeks merely to vindicate a public right to have the laws of the state properly enforced and administered." *McCarthy v. Hoan*, 221 Wis 344, 266 NW 916. See, also, *Perry v. City of Elizabethton*, 160 Tenn 102, 22 SW2d 359; *Thomas v. Riggs*, 67 Ida 223, 175 P2d 404; *Heisey v. Port of Tacoma*, 4 Wash2d 76, 102 P2d 258. The plaintiffs have a difference of opinion with the Governor, but that does not of itself make a justiciable controversy. *American Federation of Labor v. Bain*, 165 Or 183, 215, 106 P2d 544, 130 ALR 1278. They ask for no relief except that the court declare what the law is. But, as Mr. Borchard says, "a private citizen is deemed to have an insufficient interest in a declaration of what the law is." 1 Borchard, Declaratory Judgments (2d ed) 51-52. In effect, all that the plaintiffs seek by their complaint is an advisory opinion respecting the proper exercise of the Governor's pardoning power.

Putting all this to one side, it is not within judicial competency to control, interfere with, or even to advise

the Governor when exercising his power to grant reprieves, commutations, and pardons. The principle of the separation of powers written into the constitution by Article III, § 1[①] forbids it.

■ As demonstrated in the scholarly opinion of Mr. Justice Harvey in *Jamison v. Flanner,* 116 Kans 624, 228 P 82, 35 ALR 973, the pardoning power is not a power inherent in any officer of the state or any department of the state, but by the constitutions of nearly all the states, it is conferred upon the executive or upon the executive acting in conjunction with a council, board or commission. Article V, § 14 of our constitution was taken from the Indiana Constitution of 1851. 1 Burns' Ind Ann Stat 77, Art V, § 17. The Indiana Constitution, however, contained a provision that the legislature might create a council without whose advice and consent the Governor would have no power to issue pardons in any case except such as should by law be left to his sole power. A proposal for a similar council was made in the Oregon Constitutional Convention of 1857, but was rejected notwithstanding argument that the pardoning power was abused elsewhere. Carey, A History of the Oregon Constitution, 222-223. If there could be doubt otherwise, this action leaves none as to the intention of the framers of the constitution to make the Governor the sole repository of the pardoning power.

Article V, § 14 grants the power "subject to such regulations as may be provided by law." Whatever may be the extent of the authority entrusted to the Legislature to regulate the Governor's pardoning

---

[①] "The powers of the government shall be divided into three separate departments—the legislative, the executive, including the administrative, and the judicial; and no person charged with official duties under one of these departments shall exercise any of the functions of another, except as in this constitution expressly provided."

power, there are no such regulations now in existence.[2] *Fredericks v. Gladden,* 209 Or 683, 689, 308 P 2d 613; 211 Or 312, 325, 315 P2d 1010.

■ Where the constitution thus confers unlimited power on the Governor to grant reprieves, commutations and pardons, his discretion can not be controlled by judicial decision. The courts have no authority to inquire into the reasons or motives which actuate the Governor in exercising the power, nor can they decline to give effect to a pardon for an abuse of discretion. Concerning such matters, the courts "are not authorized to express an opinion." In re Opinion of Justices, 120 Mass 600. With the single exception of the remarkable opinion in *Henry v. State,* 10 Okla Crim 369, 136 P 982[3], 52 LRA, NS, 113 we know of no court which has expressed dissent from these views. Among a host of authorities, it is sufficient to cite the following: *State v. Goddard,* 69 Or 73, 78, 133 P 90, 138 P 243; *Jamison v. Flanner,* supra; *State v. Harrison,* 122

[2] In 1864 the Legislature provided: "When application is made to the governor for a pardon, before granting the same, he must require the judge of the court in which the conviction was had, or the district attorney by whom the action was prosecuted, to furnish him, without delay, with a statement of the facts proved on the trial, and of any other facts having reference to the propriety of granting or refusing the pardon; and this section also applies to an application for the remission of a fine or forefeiture." Deady's Code, p 499, § 336. This section remained in effect until it was repealed by Oregon Laws, 1939, ch 266, § 15. It was overlooked in Ex parte Houghton, 49 Or 232, 234, 89 P 801 (1907), 9 LRA, NS, 737. ORS 143.010, which authorizes the Governor to grant reprieves, commutations and pardons "Upon such conditions and with such restrictions and limitations as he thinks proper", was held in the Houghton case to be "but a restatement of the law as it exists without legislative action."

ORS 143.040 provides: "At least 20 days before an application for a pardon, commutation or remission is made to the Governor, written notice of the intention to apply therefor, signed by the person applying, and stating briefly the grounds of the application, shall be served upon the district attorney of the county where the conviction was had and upon the Director of Parole and Probation. Proof by affidavit of the service shall be presented to the Governor." This section does not purport to regulate the Governor's power. It merely prescribes a procedure to be followed by the applicant for "a pardon, commutation or remission."

[3] The court, in affirming a judgment imposing sentence of death, permitted itself *obiter* to indulge in severe criticism of the governor of Oklahoma on account of the practice attributed to him of commuting death sentences simply because he entertained conscientious scruples against capital punishment, and made an impassioned argument in favor of the death penalty for murder.

SC 523, 115 SE 746; *Martin v. State,* 21 Tex App 1, 17 SW 430; *Ex parte Crump,* 10 Okla Crim 133, 135 P 428; *Montgomery v. Cleveland,* 134 Miss 132, 98 S 111, 32 ALR 1151; *People ex rel Page v. Brophy,* 248 App Div 309, 289 NYSupp 362; 16 CJS 830, Constitutional Law § 157; 1 Bishop's New Criminal Law 562; cases cited in 30 ALR 241 and 65 ALR 1472. See, also, *Fehl v. Martin,* 155 Or 455, 458-459, 64 P2d 631; *Ex parte Grossman,* 267 US 87, 120-122, 45 S Ct 332, 69 L ed 527.

■ If, perchance, the Governor should abuse the power, the only recourse that the people have is at the polls, or, perhaps, by prosecution under Article VII, § 6 of the constitution.

The judgment is affirmed, and for obvious reasons the mandate will issue forthwith.