Argued September 18, affirmed October 14, reconsideration denied November 13, petition for review denied December 17, 1974

BURTON ET AL, *Appellants, v.*
TOMLINSON ET AL (No. 397739), *Respondents.*

527 P2d 123

*Maxwell Donnelly,* Portland, argued the cause and filed the briefs for appellants.

*Timothy Wood,* Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and FORT, Judges.

FORT, J.

This is a declaratory judgment action brought against certain named officials of various county governments. Plaintiffs are bail bondsmen. In four separate counts, they attack, on various constitutional grounds, ORS 135.230-135.295, generally and certain specific portions thereof. Defendants demurred to each count on the ground it failed to state facts sufficient to constitute a cause of action. ORS 16.260 (6). The trial court sustained each demurrer. Plaintiffs refused to plead further and judgment dismissing the action was entered for the defendants accordingly. Plaintiffs appeal.

We will consider the causes of action separately.

Plaintiffs first contend that ORS 135.230-135.295, generally, and ORS 135.265 particularly, violate Oregon Constitution, Art I, § 14.

The state of Oregon, by Oregon Laws 1973, ch 836, adopted a comprehensive new Oregon Criminal Procedure Code. Article 8 thereof relates to "Release of Defendants" and is found in ORS 135.230-135.295. ORS 135.230 (4) defines "release" as

"* * * temporary or partial freedom of a defendant from lawful custody before judgment of conviction or after judgment of conviction if defendant has appealed."

ORS 135.230 (8) defines "security release" as

"* * * a release conditioned on a promise to appear in court at all appropriate times which is secured by cash, stocks, bonds or real property."

ORS 135.265 provides:

"(1) If the defendant is not released on his personal recognizance under ORS 135.255, or granted conditional release under ORS 135.260, or fails to agree to the provisions of the conditional release, the magistrate shall set a security amount that will reasonably assure the defendant's appearance. The defendant shall execute the security release in the amount set by the magistrate.

"(2) The defendant shall execute a release agreement and deposit with the clerk of the court before which the proceeding is pending a sum of money equal to 10 percent of the security amount, but in no event shall such deposit be less than $25. Upon depositing this sum the defendant shall be released from custody subject to the condition that he appear to answer the charge in the court having jurisdiction on a day certain and thereafter as ordered by the court until discharged or final order of the court. Once security has been given and a charge is pending or is thereafter filed in or transferred to a court of competent jurisdiction the latter court shall continue the original security in that court subject to ORS 135.280 and 135.285. When conditions of the release agreement have been performed and the defendant has been discharged from all obligations in the cause, the clerk of the court shall return to the accused, unless the court orders otherwise, 90 percent of the sum which has been deposited and shall retain as security release costs 10 percent of the amount deposited. The amount retained by a clerk of the court shall be deposited into the county treasury, except that the clerk of a municipal court shall deposit the amount retained into the municipal corporation treasury. However, in no event shall the amount retained by the clerk be less than $5 nor more than $100. At the request of the defendant the court may order whatever amount is repayable to defendant from such security amount to be paid to defendant's attorney of record.

"(3) Instead of the security deposit provided for in subsection (2) of this section the defendant may deposit with the clerk of the court an amount equal to the security amount in cash, stocks, bonds, or real or personal property situated in this state with equity not exempt owned by the accused or sureties worth double the amount of security set by the magistrate. The stocks, bonds, real or personal property shall in all cases be justified by affidavit. The magistrate may further examine the sufficiency of the security as he considers necessary."

Oregon Constitution, Art I, § 14, provides:

"Offences (sic), except murder, and treason, shall be bailable by sufficient sureties. Murder or treason, shall not be bailable, when the proof is evident, or the presumption strong."

Plaintiffs, in their brief, state:

"It is Plaintiffs' position that this provision of the law is in direct conflict of the Oregon Constitution. The Constitution spells out exactly the condition upon which release shall be granted after it is determined that a certain amount of bail is necessary to guarantee the appearance of the defendant, that is, that the payment of the whole amount must be guaranteed by a sufficient surety.

"To hold that this section of the statute is constitutional would require that the court entirely disregard the words 'sufficient sureties' in the constitution."

We disagree. Essentially, plaintiffs' argument is that Oregon Constitution, Art I, § 14, not only sets a floor beneath but a ceiling upon the methods which the legislature may prescribe for the release pending final judgment of a defendant charged with a crime.

■ The constitutional provision requires only that "Offences (sic) * * * shall be bailable by sufficient sureties. * * *" Nowhere does it say that lawful re-

lease of a defendant may be accomplished only through the medium of sureties. Were this contention sound, release of a defendant on his own recognizance or by any other means would be constitutionally prohibited —an obvious absurdity. *See* ORS 136.290.

In *Price v. Zarbano,* 265 Or 126, 508 P2d 182 (1973), the Supreme Court said:

"We conclude that the statute ORS 136.290 is clear and unambiguous in its terms. Under the statute the defendant's trial must be commenced within 60 days of his *arrest*. If his trial is not commenced within 60 days of his arrest, 'the court shall release the defendant on his own recognizance, or in the custody of a third party, or upon such bail as the defendant can afford, or upon whatever additional reasonable terms and conditions the court deems just.' ORS 136.290 (2)." (Emphasis in original.) 265 Or at 129.

ORS 135.265 is patterned on the Illinois statute. Proposed Oregon Criminal Procedure Code 143, Commentary, Art 8, § 244 (1972).

In *Schilb v. Kuebel,* 404 US 357, 92 S Ct 479, 30 L Ed 2d 502 (1971), the court succinctly described the purposes of the Illinois bail reform act, as follows:

"Prior to 1964 the professional bail bondsman system with all its abuses was in full and odorous bloom in Illinois. Under that system the bail bondsman customarily collected the maximum fee (10% of the amount of the bond) permitted by statute, House Bill No. 734, approved July 17, 1959, Ill. Laws, 1959, pp. 1372, 1376, and retained that entire amount even though the accused fully satisfied the conditions of the bond. See People ex rel. Gendron v. Ingram, 34 Ill. 2d 623, 626, 217 N.E. 2d 803, 805 (1966). Payment of this substantial 'premium' was required of the good risk as well as of the bad. The results were that a heavy and irretrievable burden

fell upon the accused, to the excellent profit of the bondsman, and that professional bondsmen, and not the courts, exercised significant control over the actual workings of the bail system." (Footnote omitted.) 404 US at 359-60.

Mr. Justice Marshall, in his concurring opinion, states:

"All agree that the central purpose of the statute was to restrict severely the activities of professional bail bondsmen who had customarily collected 10% of the amount of each bond as a fee and retained all of it regardless of what happened. All agree that the new scheme is, in general, an admirable attempt to reduce the cost of liberty for those awaiting trial." 404 US at 372.

■ We agree and conclude that none of the challenged sections contravene Oregon Constitution, Art I, § 14. The assignment is without merit.

Plaintiffs next contend that ORS 131.015 (2) contravenes Oregon Constitution, Art I, § 21, and the Due Process Clause of U.S. Const. amend. XIV.

ORS 131.015 (2) states:

"The provisions of chapter 836, Oregon Laws 1973, do not impair or render ineffectual any proceedings or procedural matters which occurred before January 1, 1974."

■ There is no allegation that any of the plaintiffs have been threatened with or subjected to liability in any completed or pending action arising out of the posting by them of bail for a particular defendant prior to the effective date of this act. Accordingly, in the absence of any such justiciable controversy, we decline to consider this assignment. *Eacret v. Holmes,* 215 Or 121, 333 P2d 741 (1958); *Cummings Constr. v. School Dist. No. 9,* 242 Or 106, 110-13, 408 P2d 80 (1965).

The third assignment of error challenges ORS 135.235 as violative of the Due Process Clause of U.S. Const. amend. XIV. That statute provides:

"(1) The presiding circuit court judge of the judicial district may designate a Release Assistance Officer who shall, except when impracticable, interview every person detained pursuant to law and charged with an offense.

"(2) The Release Assistance Officer shall verify release criteria information and may either:

"(a) Timely submit a written report to the magistrate containing, but not limited to, an evaluation of the release criteria and a recommendation for the form of release; or

"(b) If delegated release authority by the presiding circuit court judge of the judicial district, make the release decision.

"(3) The presiding circuit court judge of the judicial district may appoint release assistance deputies who shall be responsible to the Release Assistance Officer."

Plaintiffs contend that the statute

"* * * will deprive persons accused of crimes of their liberty without due process of law and by the enactment of such unconstitutional legislation in lieu of the existing bail system the Plaintiffs' business is rendered nugatory and valueless and he is deprived of his property without due process of law."

■ Plaintiffs do not contend or allege that they represent any defendant accused of crime or that any such person is a party to this proceeding and, thus, lack standing to raise this question on behalf of persons who are not parties. *Eacret v. Holmes,* supra.

■■ We can see no connection between the statutory authorization allowing a presiding circuit court judge to designate a release assistance officer and prescrib-

ing his duties, and the charge that such an officer renders plaintiffs' business as bail bondsmen nugatory. Furthermore, it is nowhere alleged that such an officer has been appointed. We decline to consider it. *Cummings Const. v. School Dist. No. 9,* supra; *Eacret v. Holmes,* supra.

Finally, in the fourth cause of action, plaintiffs charge generally that ORS 135.230-135.295, relating to the release of defendants, deprive them of their right to engage in the bail bond business and is thus violative of both U.S. Const. amend. XIV, and Oregon Constitution, Art I, §§ 18, 20 and 21. The clear impact of *Schilb v. Kuebel,* supra, is to the contrary concerning the Fourteenth Amendment. Its reasoning has equal application to the challenged sections of the Oregon Constitution.

■ Furthermore, because the legislature saw fit to authorize a variety of new procedures to assure the economical release of defendants prior to judgment, it deprives the plaintiffs of no vested property rights. All that the Act does is to make available to defendants new ways to secure their release. Nothing in the Act prevents any one of the plaintiffs, should both he and a defendant so desire, from acting as a surety, for example, under ORS 135.265 (3). Because the legislature saw fit to greatly enlarge the opportunities of a defendant for release prior to judgment, with resulting drastic diminution in the demand for plaintiffs' services, it did not thereby deprive them of property but, at most, only of the benefit to them flowing from the previously existing status quo.

Affirmed.