## MICHAEL *vs.* THE STATE.

[INDICTMENT FOR ASSAULT AND BATTERY.]

1. *State laws not suspended during late war.*—The State laws, civil and criminal, were not suspended during the late war between the United States and the Confederate States; consequently, a citizen had no right, during that time, to redress his injuries by force, and is criminally responsible for such illegal acts.

2. *Plea of pardon.*—If the prisoner in a criminal case, after pleading pardon, pleads not guilty, and goes to trial on the latter plea without objection, and the jury return a verdict of guilty against him, it is not error for the court to give judgment for the costs against him.

3. *Acceptance of pardon.*—A person who was under indictment on the 13th February, 1866, when the governor published' his proclamation of amnesty and pardon, and who failed to signify his acceptance of the proffered pardon before the repeal of the law under the authority of which said proclamation was published, cannot now claim the benefit of it.

FROM the Circuit Court of Lawrence.
Tried before the Hon. WM. B. WOOD.

THE indictment in this case was found at the fall term, 1863, and charged the defendant, William Michael, with an assault and battery on Mrs. Martha J. Powell. The *capias* was not executed until the 31st January, 1866. At the spring term, 1866, the cause was continued by the State. At the September term, 1866, the defendant interposed two pleas, which are thus set out in the record : " And the said defendant, in his own proper person, protesting that he is not guilty in manner and form as charged in said indictment, says that the said offense, so charged in said indictment, is charged as having been committed between the 13th day of April, 1861, and the 20th day of July, 1865 ; and that by the proclamation of the governor of Alabama, purporting to be issued on the 13th day of February, 1866, full amnesty and pardon was granted to this defendant for said offense so charged in said indict-

ment, and he is not now liable to be prosecuted for said offense as charged in said indictment ; and this he is ready to verify. Wherefore he prays judgment. And for further plea in this behalf, pleaded by leave of the court here, the said defendant says, that he is not guilty in manner and form as charged in said indictment; and of this he puts himself upon the country." On the trial, at the same term, the judgment-entry recites that issue was joined on the defendant's pleas.

" On the trial," as the bill of exceptions states, "the State introduced evidence tending to show that the defendant and Mrs. Powell, upon whom the assault is alleged to have been committed, had a controversy about some plank ; that the defendant went to Mrs. Powell's, and demanded the plank as his property ; that Mrs. Powell refused to give it up, and claimed it as the property of her husband, who' was absent from home in the Confederate States army ; that the plank had been taken from an old house, which had once belonged to the defendant, and put up by Mrs. Powell in her smoke-house ; that the defendant once owned the land on which said old house was built, and had sold it, but had reserved the house ; that after having demanded the plank from Mrs. Powell, the defendant went again to her house, on or about the last day of December, 1862, for the purpose of taking the plank and carrying it away ; that a scuffle thereupon ensued between him and Mrs. Powell about the possession of the plank, he trying to take it away, and she trying to prevent him ; that she was hurt in the scuffle on her wrist, and struck on the head by the defendant ; that both of the parties were very much enraged during the scuffle ; and that the defendant succeeded in taking and carrying away the plank, in spite of Mrs. Powell's resistance. The testimony on the part of the State having here closed, the defendant introduced evidence tending to show, that the plank belonged to him, and Mrs. Powell had taken it, without his leave, and put it in her smoke-house ; that in trying to keep him out of the smoke-house, she bumped her head against the door, and bruised it ; that she got in the way while he was pitching the plank out of the door, and one of the planks

grazed her wrist; and that there was no other striking done than this. The defendant here closed his evidence.

"The court then charged the jury as follows:

"1. That the least striking of another, in a rude and angry manner, was an assault and battery; that civil law did exist in this State, from the 13th day of April, 1861, to the 20th day of July, 1865, though it was somewhat obstructed; that the defendant had the right to go to Mrs. Powell, and demand his plank of her, but had no right to go there and take it away by force; that, if she would not give it up, he must resort to his remedy at law to get it; that Mrs. Powell, by herself, her children, and servants, might legally resist the defendant's attempt to carry off the plank by force, by every means in her power; that if she was struck and injured by the defendant in her effort to prevent him from taking and carrying off the plank, this was an assault and battery, for which the defendant could be convicted, though the offense was a misdemeanor, and was committed between the 13th day of April, 1861, and the 20th day of July, 1865; and that the court would decide the plea of pardon.

"2. That the jury might, on this indictment, find the defendant guilty of an assault and battery, and fine him from one cent to two thousand dollars, notwithstanding his plea of amnesty and pardon, which was a plea addressed to the court.

"3. That the defendant's plea of amnesty and pardon to this indictment did not admit his guilt, so as to preclude him from the benefit of his plea of not guilty; but it was a plea for the court, and not for the jury; and that all the jury had to do on that plea was to find that the offense was committed, if committed at all, within the time covered by the governor's proclamation, granting amnesty and pardon to such offenses committed between the 13th day of April, 1861, and the 20th day of July, 1865, and certify these facts to the court in their verdict; and that the court, taking judicial notice of the governor's proclamation, would decide whether or not the plea of pardon was sustained."

Michael v. The State.

The defendant excepted to each of these charges, and then requested the court to charge the jury—

"1. That there was no civil government in this State, from the 13th day of April, 1861, to the 20th day of July, 1865; and that if there was no civil government in the State during that time, then the citizen was remitted, during that time, to his original rights, except so far as the same might be controlled by military law; and that under such a state of things the defendant was authorized to take his remedy as to the planks into his own hands.

"2. That if the jury find the defendant's plea of amnesty and pardon to be true, then they cannot fine him at all in any sum of money.

"3. That if the jury find the offense was committed between the 13th day of April, 1861, and the 20th day of July, 1865, they cannot convict the defendant."

The court refused to give each of these charges as asked, and the defendant excepted to their refusal.

The verdict of the jury was in these words: "We, the jury, find the defendant guilty, and assess a fine of $379⅔; and we further find that the offense was committed between the 13th day of April, 1861, and 20th day of July, 1865, within the time of the governor's proclamation." The judgment of the court is as follows: "It is therefore considered by the court, that the plea of amnesty and pardon of the defendant is sustained, and the said defendant discharged of said fine so assessed by the jury aforesaid; and it is further considered by the court, that the defendant be discharged upon the payment of the costs in this prosecution."

Thos. M. Peters, for the defendant.—1. The governor of this State has the power to grant "reprieves and pardons", under such rules and regulations as shall be prescribed by law, both before and ofter conviction. But can this be done before indictment, under the present law?— Const. Ala. art. 4, § 11; Code, § 3699; Pamphlet Acts, 1865–6, p. 106.

2. That a pardon *after* conviction does not release the costs, may be admitted, as that does not affect this case.

Here the pardon was *before* the conviction.—*The State v. Richardson.,* 18 Ala. 109 ; *Holladay v. The People,* [Gillm. 214; *The State v. Farley,* 8 Blackf. 229 ; *Brown v. State,* 7 Eng. 626.

3. But, if the pardon comes before the conviction, as it does here, then it puts a stop to all further inquiry and prosecution. It makes the accused "a new man"—an innocent man ; because this is the only sense in which he could be said to be made new. He is thereby "cleared" of all guilt, and of all its consequences.—7 Bouv. Bac. Abr. 415 (H); 9 Encyc. Amer. (*voc.* Pardon).

This is a general pardon, and the courts are bound to take notice of it, whether it be pleaded or not. In effect, it releases the defendant's guilt, and forbids his punishment for the offense pardoned. *Pro tanto,* it repeals the law of his crime.—7 Bouv. Bac. Abr. 413 (G) ; 7 *ib.* 405 ; *Rex v. Haines,* 1 Wil. 214 ; 7 Peters, 150 ; Hale's P. C. 278 ; *Roberts v. The State,* 2 Overt. 423 ; 26 Ala. 165 ; 1 Bin. 601; 4 Dall. 373.

4. If the defendant cannot be convicted, then there can be no taxation or judgment for costs against him ; because it is on conviction alone that taxation and judgment for costs depend. It criminal cases, no costs were allowed at common law ; costs are wholly the creature of the statute, and the statute requires that costs be taxed against the defendant only on conviction.—Code, §§ 3991, 4000; 2 Bouv. Bac. Abr. 484 ; 2 Sellon's Pr. 428 ; Archb. Cr. Pl. 151.

5. The State constitution gives the governor power to grant reprieves and pardons, under regulations prescribed by law. The act gives authority to "exercise the pardoning power before conviction, in all cases *in which* indictments *have been* or *may hereafter* be found." And the governor's proclamation grants "amnesty and pardon" to all persons charged with certain offenses. The crime charged in this case comes within the limits of the proclamation. The word "amnesty" is not used in the constitution, nor the act of the legislature ; but it gives a deeper force to the word pardon. The two together imply a total oblivion of the offense,—an entire freedom from punishment, and exempt the person on whom it is bestowed from all penal-

ty that the law inflicts for the crime charged. It wholly blots out the guilt of the accused, and after it is granted, it is slanderous to charge the person with the offense for which he has been pardoned. It seems absurd to contend that such an one could be convicted, fined, and taxed with costs.—Const. Ala. art. 4, § 11; Governor's Proclamation, Feb. 13, 1866; Acts 1855-6, p. 106; 2 Russ. on Cr. 974; Encyc. Amer. 216 (*voc. Amnesty*); 7 Pet. 160, 161; 7 Bouv. Bac. Abr. 415 (H).

6. One pardoned by general statute, as in this instance, cannot be allowed to waive his pardon, and plead guilty; because, after pardon, there is no law to punish him, and of this the court is bound to take notice. Costs are part of the punishment; they cannot be given by way of damages, as in civil cases. They therefore fall with the indictment, for it is on the success of this they stand; and the pardon dismisses the indictment.—Code, § ¡3991; Archb. Cr. Pl. 86, 87; 2 Russ. on Cr. 948; 2 Inst. 288; 2 Bouv. Bac. Abr. 484.

7. Pardon is a defense. It is a fact for a jury to find. It may be interposed by plea in bar, which properly concludes with a verification. But, if the plea has substance, it is sufficient. Here the plea was to the jury, and issue was taken on it as such. It was not a plea to the court. And being an answer to the whole indictment, it carried the costs with it.—Archb. Cr. Pl. 86, 87; Code, §§ 3649, 3650, 3651; 4 Chitt. Cr. Law, 376; Stark. Cr. Pl. 368.

8. The court, when it forms a judgment, constructs it out of certain materials, which are law. Here no judgment for costs at common law could have been given against the accused; and by our statute, no judgment can be rendered except on confession, for costs. In civil cases, this is otherwise; but in criminal cases, when the accused is convicted, the court may allow him to confess judgment for costs and fine, "with good securities"; or, if he fails to do this, or pay the fine and costs, may imprison him. The court's action here was wholly unauthorized.—Ram Judg. 3, *et seq.*; McLeod v. The State, 35 Ala. 395; Archb. Cr. Pl. 150; 2 Bouv. Ba. Abr. 484; Code, §§ 3624, 3625-31, 2375.

9. The lands within the area of the States and territo-

ries of the Union constitute the territory of the United
States ; and within these limits, the constitution and laws
of the Federal government are the supreme law of the land.
All other constitutions and laws, within these boundaries,
which conflict with the constitution and laws of the United
States, are void.  The Confederate State government of
Alabama, from secession to the failure of the rebellion, was
no government at all.  It was but an attempt to form a
government, which wholly failed.  Such government, and
all its acts, are void ; because it was, in purpose and in fact,
in conflict with the supreme law of the land.—Const. U. S.
art. 6, § 2 ;  Ordinance of Convention September 12, 1865,.
pp. 48, 49 ; *Bronson v. Kinzie,* 1 How. S. C. 311 ; *Pollard's
Lessee v. Hagan,* 3 How. S. C. 212.

10.  After the formation of the Federal government, and
the transfer of the colonial lands to this government, it
became the proprietor of all the lands outside the bounda-
ries of the States ; and no State or territorial government
could be established on these lands, without the consent of
congress.  This consent could be given before or after the
State was formed.—Act of Congress, admitting Alabama,
Code, p. 25 ; Hickey's Const. of U. S. pp. 426, 423, 431 ;
Const. of U. S. art. 4, § 3, chap. 2.

11.  When new States are admitted into the Union, they
form State governments, which are subordinate to the
national government.  The State government thus estab-
lished is required to be republican.  It must embody its
act of formation in a written constitution.  This constitu-
tion creates the State government ; and if it is in conform-
ity with the constitution of the United States, it becomes
henceforth the supreme law of the State.  The government
thus set up is a perpetuity ; it is not merely provisional.
It cannot be legally overturned or altered, except by revo-
lution, unless the alteration is effected in the manner pre-
scribed by the constitution itself.  And if the constitution
directs how alterations shall be made, this becomes the law
of such alterations, and must govern them.  By our consti-
tution, all this is provided for.—Const. U. S. art. 6, § 2 ;
Const. Ala. *Preamble and Amendments ; Collier v. Frierson,*

24 Ala. 100 ; Const. Ala. art. 6, § 1 ; Story, Const. § 1807, *et seq. ;* Serg. Const. Law, 401, 398, *et seq.*

12. The constitution of this State makes a government ; it distributes its powers, and appoints the mode of its amendment. It vests the legislative powers in one set of officers, the executive in another, and the judicial in still a third. None of these powers are vested in a "convention of the people." There cannot be two law-making bodies in the State at the same time, whose powers are general. So the constitution of January 7th and March 4th, 1861, and the constitution of September 12th, 1865, and all their ordinances, are void, because these conventions were held without any legal warrant whatever. The powers they exercised were never vested in them, and could not be as long as the State constitution remained. They simply usurped their law-making powers ; and their constitutional amendments or revisions are void for want of submission to a vote of the people.—Const. Ala. (*Preamble*) ; *ib.* art. 2, § § 1, 2 ; *ib.* art. 3, § 1, art. 4, § 1, art. 5, § 1 ; *Haley v. Clark*, 26 Ala. 439 ; *Stein v. Mayor &c. Mobile*, 24 Ala. 591; 24 Ala. 81 ; 22 Ala. 118 ; 26 Ala. 439.

13. To say that the people are supreme, that they can do as they please, regardless of the fundamental law by which they have bound themselves, is to say that constitutions do not bind the people. Conventions of the people are not things made of paper and printers' ink. They are such conventions as the people hold under the people's law. They are not conventions of a faction seeking to disregard the law. They are called by the people, for legal purposes, and not to utter the vociferations of the mob. A constitutional amendment may be illegal, as well as a law, and such cannot be made good. *Ubi ab initio non valet, in tractu temporis non convalescent.*—Const. Ala. (*Amends.*) ; Const. Ala., art. 1, § 30; Broom's Max. (772) 72; Const. U. S., art. 4, § 4, art. 1, § 2 ; 24 Ala. 591 ; 26 Ala. 100 ; 1 Kent, 448, 449, 450 ; Story Const., § § 1807 *et seq.*

14. There was, then, no legal civil government in this State, from January 11, 1861, to July 20, 1865, if indeed ever since then ! The Confederate State government was a usurpation and a failure.—President Johnson's Procla-

mation, June 21, 1865; Gov. Patton's Proclamation, Feb. 13, 1866.

15. Then, if no lawful government, then also no lawful courts, during the reign of secession, for redress of wrongs in this State; and, as a matter of necessity, during this time the people were remitted to their natural rights of taking care of themselves as best they may; each one became the redressor of his own injuries, and in doing this, if he did not go beyond what was necessary for that purpose, he was justified. The defendant did no more than this in reference to his planks. He simply recaptured it from one who had no right to hold it. *Necessitas inducit privilegium.*—Decl. of Independence, Code, p. 9; *State v. Johnson,* 12 Ala. 840; Broom's Maxims, (6) 33; President Johnson's Proclamation, June 21, 1865; Gov. Patton's Proclamation, Feb. 13, 1866.

16. No doubt, the ultimate sovereignty, the government-making sovereignty, resides in the people. But, after a government is once formed by the people, they can only exercise this sovereignty by revolution, or in the manner they have prescribed to themselves in the constitution. The State in its corporate capacity is the people, limiting their conduct by the constitution. The State laws are their edicts.— Const. Ala. art. 1, § 30; *Dorman v. The State,* 34 Ala. 216; 3 How. S. C. 212, 224, 225.

JNO. W. A. SANFORD, Attorney-General, *contra.*

BYRD, J.—It may be conceded that the governor had the authority to issue his proclamation of pardon, bearing date February 13, 1866, under the act approved December 14, 1865.—Pamphlet Acts, 1865-6, p. 106. But that act was repealed by the adoption of section 766 of the Penal Code, which went into operation the 1st day of June, 1866, which was prior to the trial of this cause in the court below. At the September term, 1866, of the circuit court, two pleas were filed by the appellant; one was, in substance, the proclamation of pardon issued by the governor, above referred to, and the other was the plea of not guilty. The cause had been continued at the spring term, 1866, by the State,

and appellant did not then plead his pardon or other plea. It appears that the offense with which appellant was charged, was committed in 1862; and the proclamation of the governor embraces all offenses, except rape and murder, committed between the 13th day of April, 1861, and the 20th July, 1865.

[1.] The counsel for the appellant contends, with much earnestness and ability, that the State of Alabama being in rebellion against the national government, at the commission of the offense, therefore all law was suspended in the State, and appellant was not responsible for the offense with which he is charged, and had the right to redress his own wrongs. We cannot assent to such a conclusion, or any part thereof. It is not supported by any respectable modern judicial authority, and is wholly at variance with the positions and authorities taken and cited in the opinion of this court, rendered at this term, in the case of *Watson and Wife v. Stone.*

[2.] It is also insisted that a pardon, granted before conviction, puts a stop to all further proceedings, and relieves the prisoner from the payment of costs. The weight of authority, English and American, seems to us to incline in favor of the proposition, that if such pardon is issued by the executive department of the government, it must be specially pleaded, to entitle the prisoner to his discharge from all the penalties of the law and the costs of the suit not then taxed against him; and that such plea is taken as evidence of the acceptance of the pardon, in the absence of any other evidence thereof.—*United States v. Wilson,* 7 Peters, 150; *Brikenden's case,* Cro. Car. 9; *Baldoy v. Packard,* Cro. Car. 47; *The King v. Rodman,* Cro. Car. 198; 4 Hawk. 352, § 41; *The State v. Farley et al.,* 8 Blackf. 229; *Anglea v. Commonwealth,* 10 Gratt. 696. It seems also to be settled, that a prisoner must plead specially all pardons, except such as may be granted by the legislative department of the government.—Foster's Cr. Law, 43; *Swayne v. Rodgers,* Cro. Car. 32; *Bell's case,* Cro. Car. 449; 1 Baldwin, 91; 4 Hawk. 357, §§ 59–60; 359, § 64.

It has also been held, that where it is necessary to plead a pardon, it cannot be pleaded together with the plea of

not guilty, unless it be of a date subsequent to the time of the pleading such issues; if otherwise, it is waived by it.—4 Hawk. 360, § 67; Bacon's Abr. 414; 5 Com. Dig. 247; 1 Bish. Cr. Pro. § 596.

But, however this may be, under the liberal system of pleading allowed in this country, we proceed to dispose of this branch of the case on other grounds, in addition to the above. Upon the plea of "not guilty", issue was joined by the State's attorney. Upon this plea, the prisoner submitted his cause to the jury, without objection, and there is no evidence in the bill of exceptions which shows that the prisoner proved, or attempted to prove, the special plea. We do not intimate that this was necessary to be proved to the jury. The jury found a verdict against the prisoner, on the plea of "not guilty", and assessed a fine against him, and also found that the offense was committed within the time alleged in the special plea; and upon this verdict the court entered a judgment, in substance, for the costs of suit. If a prisoner, after pleading a pardon, pleads not guilty, and goes to trial upon it without objection, thereby insisting on his innocence, and the jury returns a verdict of guilty thereon, it is not error for the court to give judgment against him for costs.

[3.] We further hold, that the act of December, 1865, being repealed before the trial and the filing of the pleas, and before any acceptance by the prisoner of the pardon, so far as the record discloses, the appellant could not avail himself of the protection of the pardon, by an acceptance at that time; and this view is strengthened by the pleas, which, in effect, allege that he did not need or claim the pardon offered, but preferred to stand on his asserted innocence. In the case of *The United States v. Wilson, (supra,)* Chief-Justice Marshal, in the opinion of the court, says: "A pardon is a deed, to the validity of which delivery is essential; and delivery is not complete without acceptance. It may, then, be rejected by the person to whom it is tendered, and if it be rejected, we have discovered no power in a court to force it on him." Upon the pleadings, evidence, verdict, and law, we hold, that the

judgment of the court below was as favorable to the appellant as he had a right to claim.

We now proceed to dispose of the exceptions taken to the several charges given by the court. The bill of exceptions does not purport to set out all the evidence introduced on the trial. It sets out what the evidence tended to show, but does not purport to set out *all* that it tended to show. In this state of the record, we can perceive no error in the charges given by the court, which operated any detriment to the prisoner. It devolves upon him to show error affirmatively. So far as the charges refer to the matter of the special plea and the pardon, it is very evident that whatever errors were committed, if any, were without injury to the appellant.

Let the judgment of the court below be affirmed.