Argued February 13, decided March 3, 1914.

# DOWD *v.* AMERICAN SURETY CO.

(139 Pac. 112.)

**Corporations—Dissolution—Pleading.**

1. In an action against a surety company on the bond of a corporation in condemnation proceedings, allegations of the answer that the corporation was dissolved by a proclamation of the Governor, and thereupon ceased to be a corporation, and was not thereafter reinstated, or authorized to act as a corporation, without showing the delinquency of the corporation authorizing the Governor to proclaim its dissolution, under Section 6717, L. O. L., providing that in each year the Secretary of State shall report to the Governor a list of all corporations which for two years or more have failed to furnish any statement, or to pay any license fee, and the Governor shall forthwith declare such corporations dissolved, are insufficient to show such dissolution.

**Principal and Surety—Discharge of Surety—Dissolution of Corporate Principal.**

2. Under Section 6708, L. O. L., providing that the right of a delinquent corporation to transact business shall be deemed in abeyance,

and it shall not be permitted to maintain any suit, but the delinquency shall not operate to impair or delay the right of any other person, firm or corporation, the surety on the bond of a corporation cannot set up the fact that the corporation has been dissolved by proclamation of the Governor as a defense to the surety's liability on the bond.

[As to what operates as release of surety, see note in 28 Am. St. Rep. 691.]

**Eminent Domain—Proceedings to Assess Compensation—Parties.**

3.   Under Article XI, Section 4, of the Constitution, providing that no person's property shall be taken by any corporation under authority of law without compensation first made or secured as prescribed by law, and Section 6532, L. O. L., providing that, on giving the security therein provided, the plaintiff corporation in condemnation may, without waiting for trial, commence and prosecute the work of constructing and maintaining a ditch, canal or flume, where the plaintiff corporation has so taken possession, and the defendant dies pending the litigation, his personal representatives are properly substituted as parties rather than his heirs.

[As to right to condemnation money as between heir or devisee and executor or administrator, see note in Ann. Cas. 1912C, 595.]

**Principal and Surety—Discharge of Surety—Notice of Proceeding Against Principal.**

4.   Under Section 157, L. O. L., providing that trial by jury may be waived by the parties in actions on contract, and with the assent of the court in other actions, by written consent in person, or by attorney, filed with the clerk, and Section 160, providing that the issues, whether of law or fact, may be referred on the written consent of the parties, a reference to arbitrators on a written stipulation of the parties in condemnation proceedings to determine the amount of damages does not release the surety of the plaintiff on its bond, though the surety was without knowledge of the arbitration proceedings.

**Principal and Surety—Discharge of Surety—Insolvency of Principal.**

5.   The insolvency of the plaintiff corporation in condemnation proceedings does not affect the liability of the surety on its bond, where such insolvency does not appear to be attributable to the adverse parties.

From Multnomah: Henry E. McGinn, Judge.

Department 1.   Statement by Mr. Justice Burnett.

This is an action by James Dowd, executor, and Kate Dowd, executrix, of the last will and testament of James Barry, deceased, against the American Surety Company of New York.

Originally the Pence Company brought an action to condemn land belonging to one James Barry, for the purpose of constructing a ditch and flume over the

premises. In order to acquire the land at once, without waiting for compensation to be assessed and tendered, the Pence Company and the American Surety Company, defendant herein, executed an undertaking in that action "conditioned for the payment of any and all damages and compensation that may be awarded to the defendant in the above-entitled action, and to which the said plaintiff and the said surety hereby bind themselves, their heirs, executors, and administrators." After the action was at issue, a stipulation was filed by the parties thereto, reciting the necessary powers of the plaintiff company and ownership of the land in the defendant there; that the plaintiff had appropriated water to its use which it was necessary to conduct across the land of the defendant; that such lands had been actually taken by the company; that the parties had not been able to agree; and further stipulated in these words:

"That, in order to determine and fix the damages sustained by defendant on account of the taking of the land described in the complaint, and the damages sustained by the defendant on account of the construction of said ditch, canal, or flume, it is agreed that the same shall be submitted to a board of arbitration composed of three persons, one of said persons to be chosen by the plaintiff, another by defendant, and the third by the two persons so chosen as aforesaid by plaintiff and defendant, and that said three persons shall proceed to view said premises and said ditch, canal, or flume, determine the damages sustained by the defendant on account of the taking of said land and the construction of said canal, ditch, or flume, without the taking of testimony or the argument or assistance of counsel, except as the same may be requested by said board of arbitration, and said finding of said board of arbitration, or a majority thereof, shall be final as to said damages sustained by defendant. And it is further agreed that the selection of said three persons shall be concluded by Saturday, the 8th day of June, 1907, and,

in case said three persons are not chosen on or before said last-mentioned date, this agreement shall be null and void, and of no force or effect. And it is further agreed that an award of said board of arbitration or a majority thereof shall be made on or before Wednesday, the 12th day of June, 1907, and that the same shall be immediately filed with the clerk of the above-entitled court, and, when so filed, it is agreed by the parties hereto that the defendant may take judgment against the plaintiff for the amount of said award, and said judgment may be entered upon the records of this cause as any other judgment rendered upon the verdict of a jury or the findings of the court, and the same as if said cause had been tried by the court and jury, and shall be final and binding upon the parties hereto as any other judgment rendered in this cause upon all of the matters referred to herein and in said complaint.''

The complaint in the case at bar alleges the choosing of the arbitrators, and that prior to June 12, 1907, a majority of them made a return for filing in the action an award in the sum of $3,425 in favor of the defendant land owner. That pleading further gives the history of a suit by the company to restrain the defendant and the arbitrators from filing the award, which suit prevented judgment on the decision of the arbitrators until as late as December 1, 1911.

It is alleged that James Barry died September 10, 1907, and that the plaintiffs here were substituted as defendants in the condemnation action in which judgment on the award was entered prior to the commencement of this action. Alleging a demand that the defendant pay the amount of the judgment which had been refused, plaintiffs here demand judgment against the surety company for the amount of the judgment on the award, with interest thereon from January 5, 1907. In passing, it may be remarked about the interest that the parties have stipulated, in effect, that, in case the

judgment appealed from is affirmed, interest shall be calculated only from December 2, 1911. After traversing the complaint in material particulars respecting the proceedings under the stipulation for arbitration, the defendant surety company alleges in substance: (1) That it had no knowledge in any way of the arbitration proceedings; (2) that in the condemnation action no other judgment was rendered except the one in which the executors, plaintiffs here, had been substituted instead of the decedent; and (3) that the judgment was rendered after the Pence Company had been dissolved, the specific allegation on that point being as follows:

"That a long time prior to the 1st day of December, 1911, the Lafe Pence Company, plaintiff in the condemnation proceedings hereinabove and in the complaint herein referred to, was dissolved by a proclamation of the Governor of the State of Oregon, and thereupon ceased to be a corporation or entitled to do business in the State of Oregon, and was not thereafter reinstated or authorized to act as a corporation or to do business in the State of Oregon or elsewhere, and has remained and is now defunct."

The Circuit Court sustained a general demurrer to each of these separate defenses. No other pleadings were filed, and the action was tried on a stipulation substantially admitting the allegations of the answer to which a demurrer had been sustained. The court made findings of fact which are practically a recital of the pleadings, and concluded the case by entering a judgment in favor of the plaintiffs and against the defendant for the amount of the award, $3,425, with interest from January 5, 1907. The defendant appeals.                              Affirmed.

For appellant there was a brief over the name of *Messrs. Kollock & Zollinger,* with an oral argument by *Mr. M. A. Zollinger.*

For respondent there was a brief over the names of *Mr. John T. McKee* and *Messrs. Cake & Cake,* with an oral argument by *Mr. McKee.*

Mr. Justice Burnett delivered the opinion of the court.

1. It is first contended that the judgment of condemnation and of recovery of damages against the Pence Company was void, because that corporation had been dissolved by proclamation of the Governor, and, further, because the personal representatives of the decedent were not entitled to be substituted on his death; the contention on that point being that his heirs should have taken the place of the decedent. As to the dissolution of the corporation, no facts are alleged in the answer authorizing the executive to make such a proclamation. It is said in Section 6717, L. O. L.:

"On or before the first Monday in January in each year the Secretary of State shall report to the Governor a list of all corporations which for two years or more next preceding such report have failed, neglected, or refused to furnish any such statement or to pay any such license fee, and the Governor shall forthwith issue his proclamation declaring such corporations dissolved and their articles of incorporation revoked and repealed."

Other provisions are made in subsequent sections for the publication of the Governor's proclamation, for a penalty to be inflicted upon anyone who shall exercise any power under the articles of incorporation after the proclamation has issued, and for the correction by the Governor of any mistake he may have made in filing his proclamation.

2. It is not necessary to determine whether or not such a proceeding would be depriving a corporation of its existence without due process of law. It is enough

in this case to say that, as a matter of pleading, the answer is defective in not showing the delinquencies of the corporation authorizing the executive to proclaim its dissolution. In any event, the mere *ipsi dixit* of the Governor is not of sufficient sanction for the dissolution of a corporation, unless lawful reasons therefor are also stated in the pleading. Moreover, it is provided in Section 6708, L. O. L., that: "While such delinquency shall continue, the right of such delinquent corporation, company, or association to transact business shall be deemed to be in abeyance, and such corporation, joint stock company, or association shall not be permitted to maintain any suit, action, or proceeding in any court of justice in this state; but the said delinquency of such corporation or joint stock company or association shall not operate to impair or delay the right of any other person, firm, or corporation." Under this statute, it does not lie in the mouth of the defendant here to count upon the delinquency of its principal as a means of escaping its liability to the obligee in the undertaking, or his representatives.

3. It may be conceded that, if there had been no taking of the land prior to the judgment of condemnation, the action should have been continued in the name of the heirs of the decedent, because upon them would have descended the title to the land subsequently to be taken. In cases where the assessment and payment of compensation for a proposed taking are made a condition precedent to the appropriation, the action must be maintained against the owner of the land, and against his heirs or devisees in case of his death *pendente lite.* The substance of such a proceeding is to establish an optional price at which, by virtue of the right of eminent domain, the plaintiff may force a sale to itself of the desired premises, which option it may exercise or decline at its election. It is provided, however, in Sec-

tion 6532, L. O. L., that, upon giving security therein provided, the plaintiff corporation in a condemnation action, "without waiting for the trial of the action, * * may commence and prosecute the work of constructing, operating, and maintaining its proposed ditch, canal, or flume, as the case may be. * * " Possible sanction for such a procedure is found in Article XI, Section 4, of the State Constitution:

"No person's property shall be taken by any corporation, under authority of law, without compensation being first made or secured in such manner as may be prescribed by law."

The taking having thus been actually accomplished, what remains to be done in the litigation is substantially nothing more than fixing the purchase price of the property already acquired by the plaintiff corporation which must be paid in any event. The land has been taken. The owner has been deprived of it. What remains is to ascertain and recover what to all intents and purposes is a mere purchase price. This amounts to a chose in action which accrues not to his heirs direct in case of his death, but to his executor or administrator. The conclusion on this point is that, as a matter of law, under the conditions existing in the action at the time, it was proper to substitute his executor instead of the decedent. The purchase price of the premises already taken had been substantially ascertained prior to the death of the original owner of the land. Except for the suit enjoining the filing of the award which has been already mentioned, the action was ripe for judgment in his favor for the amount assessed. His subsequent death *pendente lite* did not destroy the action, nor admit of the substitution of his heirs. His executors were the proper parties to continue in his stead in the action for the recovery of the amount of damages.

4. The principal contention of the defendant surety company is that the so-called arbitration proceedings were had without its knowledge, and that it was not bound by them. It contends that an action should have been tried before a jury, in default of which it is exonerated from its undertaking. It is not so nominated in the bond. That instrument, as expressed therein, was "conditioned for the payment of any and all damages and compensation that may be awarded to the defendant in the above-entitled action." The arbitration was substantially a trial by referees upon the written consent of the parties as provided in Chapter 6, Title 2, L. O. L. It is said in Section 157, L. O. L., that:

"Trial by jury may be waived by the several parties to an issue of fact, in actions on contract, and with the assent of the court in other actions, in the manner following: * * By written consent, in person, or by attorney, filed with the clerk. * * "

It is said, also, in Section 160, L. O. L., that "all or any of the issues in the action, whether of fact or law, or both, may be referred upon the written consent of the parties."

In the present instance the parties, in very truth by their written agreement, consented to the reference of the issue of compensation to three referees. The undertaking did not stipulate for a trial by jury. The method of trial was left open, and the defendant here was bound to know that a possible mode was the one substantially adopted in that action. The court rendering judgment for condemnation and compensation for the taking was a court of general jurisdiction, with the parties before it, and the right to determine the kind of action in hand. Under such conditions it has rendered its judgment. If erroneous at all, it is in the mere details of procedure to which the parties

themselves agreed, and it cannot be collaterally assailed in this action.   As stated by the Supreme Court of Michigan, in *Lothrop* v. *Southworth,* 5 Mich. 436, speaking of a surety on an injunction bond:

"His obligation as surety in the bond is to pay to Lothrop all such damages and costs as should be awarded against Southworth in the chancery suit. This obligation was broken as soon as a decree awarding damages was made, and the execution thereon returned unsatisfied. It did not extend back of the decree, and relate to matters upon which it was founded.  The condition was broken upon nonpayment, and the proof of the breach maintains the action, This is the rule in all cases.   In those cited by the defendant's counsel, where it was held that the judgment against the principal is not conclusive upon the surety, and in all others of the same character, it is so held because the undertaking related to the cause of action; in the present case the undertaking relates to the result.   The cause was to be litigated by Lothrop and Southworth; Cleveland (as surety) could not be heard in court, as he had no interest in the subject of the controversy.  He, as an indifferent person, stepped in to the aid of Southworth, to enable him to prosecute his action, and undertook that he should abide the judgment of the court.  He can therefore raise no question of the correctness of the decree, nor impeach it in this collateral proceeding."

We cannot in this case sit as upon an appeal by the Pence Company from the judgment rendered in the condemnation action.   We can only accept the results as declared by the court of competent jurisdiction in its judgment.   That determination, as a matter of procedure, was a legitimate statutory result of the litigation which must have been in the contemplation of the surety when it signed the undertaking in the language quoted.   The cases cited by the defendant are those where, either the surety has been deprived of some security or remedy, or the judgment against its princi-

pal was fraudulent or collusive to its damage, or a new contract was substituted for the one secured, or they depend upon some particular wording of the undertaking involved. None of such conditions appears here.

5. Neither is it of any consequence that the principal became insolvent, for it does not appear to be attributable to the plaintiffs, and, moreover, the possibility of that result was one of the strongest reasons for requiring any security at all.

The substance of the whole matter is that the defendant here made itself a party to the actual taking of the property of another, and agreed absolutely and at all events to pay the compensation to be awarded in the action. It reserved no alternative in the matter. A measure of compensation has been legitimately awarded. The defendant has not paid. It should be compelled to pay. The judgment of the Circuit Court was wise and just.

It is affirmed, with the stipulated qualification that interest on the amount of the award shall be calculated at the statutory rate only from December 2, 1911.

AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE RAMSEY concur.