and there can be no dedication under such circumstances until the same is accepted by the county.'' It appears affirmatively in this case that there has been no such acceptance.

3. There is another reason why plaintiffs have failed to make out a case. They are not entitled to enjoin the acts of defendant in blocking the alleged roadway without showing special damage to plaintiffs as the result of the acts complained of. They allege such special damage, but this allegation is denied and they have furnished no evidence to maintain their contention on this issue. The pleadings admit that three of the plaintiffs own property in the vicinity, but it does not appear that they have occasion to travel the alleged road.

It follows that the decree of the lower court is reversed and a decree will be entered here dismissing the suit.    REVERSED.  SUIT DISMISSED.

---

Argued before Department 2, October 23, 1917.
Reargued before the court *in banc*, February 27, reversed and remanded March 19, 1918.

## CARPENTER v. LORD.[*]

(171 Pac. 577.)

**Arrest—State Courts—Where Effective.**

1. A warrant of arrest, issued by a state court, is ineffective beyond the boundaries of the state.

**Extradition—Persons in Custody—Discretion of Governor.**

2. Section 1874, L. O. L., providing that one in custody on a criminal charge cannot be delivered up to another state until legally discharged, is mandatory, and the Governor has no discretion, in view of

---

[*]To determine who are fugitives subject to extradition, see notes in 28 L. R. A. 289; 51 L. R. A. (N. S.) 669.    REPORTER.

Section 756, L. O. L., making judgments conclusive as to the legal condition of any person.

[As to the grounds on which a state may refuse to surrender persons demanded by the authorities of another, see note in 68 Am. St. Rep. 129.]

Extradition—"In Custody."

3. A convicted person, on parole under a judgment, is "in custody," within Section 1874, L. O. L., providing that one in custody upon conviction of crime cannot be extradited.

Pardon—Effect of Pardon—Necessity for Acceptance.

4. The Governor may pardon an offender; but it is ineffective unless the offender accepts.

McCAMANT and MOORE, JJ., dissenting.

From Multnomah: JOHN P. KAVANAUGH, Judge.

In Banc. The plaintiff, Ida Carpenter, acting in behalf of her husband, E. H. Carpenter, sued out a writ of *habeas corpus* in the Circuit Court for Multnomah County against the sheriff of that county and one Frank Lord, the latter of whom avers that he is the agent of the State of California commissioned to return Carpenter to that state on extradition process.

The defendant sheriff first stated that he held Carpenter by virtue of a commitment from the Municipal Court of the City of Portland charging him with being a fugitive from the justice of the State of California. He afterwards amended his return to show that he had delivered the custody of Carpenter to Lord as agent of the State of California. The latter alleges that he holds the prisoner under an executive warrant issued by the Governor of Oregon, dated November 16, 1914, directing his arrest and delivery into the custody of Lord as such agent to be transported to the State of California. He further says that he holds Carpenter by virtue of a warrant issued out of the Police Court of San Francisco, California, commanding his arrest for the crime of forgery, pending against him in that court. These returns are contro-

88 Or.—9

verted in material particulars by the reply of the peti-
tioner which, among other things, avers that on
November 5, 1914, Carpenter was duly and regularly
convicted in the Circuit Court for Multnomah County,
Oregon, of the crime of obtaining money under false
pretenses and that in pursuance of such conviction it
was ordered and adjudged by said Circuit Court as
follows:

"That said defendant, E. H. Carpenter, be im-
prisoned in the Oregon State Penitentiary for an in-
determinate period of not less than one year nor more
than five years.

"Defendant making application for parole, and the
Court consenting thereto.

"It is ORDERED that said defendant be allowed to go
on parole on condition that he will not leave the state
of Oregon, and that he will not violate the laws of the
State of Oregon or any state or municipality in which
he may live, and further that he will report by letter
at least once a month to Judge MORROW."

The petitioner further states that her husband is now
in custody in the State of Oregon upon said judgment;
that the same is still in full force and effect; and that
he has never been discharged therefrom.

The defendant Lord demurred to this reply on the
ground that it did not state facts sufficient to constitute
a defense to his return. The demurrer was sustained
and the petitioner having refused to move or plead
further it was ordered that her prayer for the discharge
of Carpenter be denied, the writ dismissed and that he
be remanded to the custody of the defendant Lord to be
transported to the State of California. The petitioner
appealed.          REVERSED AND REMANDED.

For appellant there was a brief over the names of
*Mr. John J. Fitzgerald, Messrs. Logan & Smith* and

*Mr. J. P. Hannon,* with an oral argument by *Mr. Fitz-gerald.*

For respondent there was a brief over the names of *Mr. Walter H. Evans,* District Attorney, *Mr. George Mowry,* Deputy District Attorney, and *Mr. Arthur A. Murphy,* with an oral argument by *Mr. Mowry.*

BURNETT, J.—The scope of this opinion will be limited to the consideration of the value to be given to the judgment of the Circuit Court of Multnomah County convicting and sentencing the defendant Carpenter to imprisonment in the penitentiary and paroling him. It is said in Section 756, L. O. L.:

"The effect of a judgment, decree, or final order in an action, suit, or proceeding before a court or a judge thereof of this state or of the United States, having jurisdiction to pronounce the same, is as follows:

"1. In case of a judgment, decree or order against a specific thing, or in respect to the probate of a will or the administration of the estate of a deceased person, or in respect to the personal, political, or legal condition or relation of a particular person, the judgment, decree, or order is conclusive upon the title to the thing, the will or administration, or the condition or relation of the person. * * *"

The following sections of the same compilation are also here set down:

Section 1873. "A person charged in any state or territory of the United States with treason, felony, or other crime, who shall flee from justice and be found in this state, must, on demand of the executive authority of the state or territory from which he fled, be delivered up by the Governor of this state, to be removed to the state or territory making the demand."

Section 1874. "When the person demanded is in custody in this state, either upon a criminal charge, an indictment for a crime, or a judgment upon a con-

viction thereof, he cannot be delivered up until he is legally discharged from such custody; but if he be in custody upon civil process only, the Governor may deliver him up or not before the termination of such custody, as he may deem most conducive to the public good.''

1, 2. At the outset, the warrant issued by the Municipal Court of the City of San Francisco may be laid aside without further consideration because it is universally held that no process of any state court has any effect or efficiency beyond the boundaries of the state under whose laws it was issued. It is well settled that there is no power to compel the executive of any state to surrender an alleged fugitive from justice. The legislative branch of the government of this state has gone further in limiting the authority of the executive in such matters by the precept in Section 1874 that if the demanded person is in custody in this state upon a judgment of conviction of crime he cannot be delivered up until he is legally discharged therefrom. This is mandatory language and completely removes any discretion which the executive might otherwise exercise in such a case. It is contended, however, that this cannot be urged by or on behalf of the petitioner. In support of this contention we are cited to the following cases: *Ex parte Marrin*, 164 Fed. 631; *In re Fox*, 51 Fed. 427; *People v. Hagan*, 34 Misc. 85 (69 N. Y. Supp. 475); *Cozart v. Wolf* (Ind.), 112 N. E. 241; *Mackin v. People* (Ill.), 8 N. E. 178. In all those decisions without exception the prisoner who sought relief by *habeas corpus* was at large on bail at the time he was taken into the custody from which he sought to escape. For instance, in the Marrin case, he had been convicted in the United States District Court for the Eastern District of Pennsylvania for a violation of the postal laws and had been admitted to bail pending appeal. While

he was thus at large he went into the State of New York and was there apprehended under state process to answer indictments pending in the courts of that state. He sought relief from the custody of the state of New York by *habeas corpus* issued by the United States court of the eastern district of New York. As appears by the report of the case it turned upon Section 753 of the Revised Statutes of the United States:

"The writ of *habeas corpus* shall in no case extend to a prisoner in jail, unless where he is in custody under or by color of the authority of the United States, or is committed for trial before some court thereof, or is in custody for an act done or omitted in pursuance of a law of the United States, or of an order, process, or decree of a court or judge thereof, or is in custody in violation of the Constitution or of a law or treaty of the United States."

The court determined in concluding the discussion in the case that

"Frank C. Marrin, therefore, does not seem to be held contrary to any law of the United States, nor in violation of any of his constitutional rights, and the writ of *habeas corpus* must be dismissed."

In the course of the opinion, however, the court likewise said:

"It has also become well settled that if a party is on trial or in duress, that is, in actual custody, under the authority of a state court, no other state court, and no United States court, should, except in an urgent case, take the defendant from that custody, prior to an actual release or relinquishment of the right to the custody on the part of the court before which the matter is pending."

The principle underlying all the cases last above cited is that when an individual is allowed to go on bail, pending a charge against him, the court admitting

him to bail has released him from its authority for the time being which for the purpose of being answerable to another tribunal relegates him to his previous situation making applicable the doctrine that if a defendant is simultaneously accused in different forums it does not lie in his mouth to select the charge upon which he will first be tried. Thus far there has been no final adjudication of his status upon which he can rely. The case in hand has passed that stage. A court of this state having original jurisdiction has not only assumed control of Carpenter but is in fact executing its judgment upon him and under the very doctrine laid down in the Marrin case ought not to be disturbed in that exercise of its authority. This is in accord with the rule enunciated by Mr. Justice SWAYNE in *Taylor* v. *Taintor,* 16 Wall. (U. S.) 366, 370 (21 L. Ed. 287), thus:

"Where a state court and a court of the United States may each take jurisdiction, the tribunal which first gets it holds it to the exclusion of the other until its duty is fully performed and the jurisdiction invoked is exhausted: and this rule applies alike in both civil and criminal cases. It is indeed a principle of universal jurisprudence that where jurisdiction has attached to person or thing, it is, unless there is some provision to the contrary, exclusive in effect until it has wrought its function."

No case has been produced and it is believed none can be cited where a prisoner has been taken from a state where he is actually serving sentence under a valid judgment of a court of that jurisdiction.

3. The defendant urges that the prisoner must be actually and not constructively in custody to defeat his arrest and transportation upon an extradition warrant. As above stated, the cases cited in support of this argument are those where the individual was at large on bail and hence manifestly not in custody. It remains to

consider whether Carpenter is in custody within the meaning of Section 1874, L. O. L. It is provided in substance in Section 1586, L. O. L., as amended by the act of February 18, 1911, that when a person is convicted of felony and sentenced for not to exceed ten years' imprisonment in the penitentiary and sentence has been pronounced the court may in its discretion parole him and permit him to go and remain at large under the supervision and subject always to the order of the court as it may deem best until the parole shall be terminated. It is provided by Section 1587, L. O. L., that the order of parole shall require, among other things, that the defendant shall report to the court his whereabouts with such further and additional information as it may desire or demand. Section 1589, L. O. L., empowers the court to revoke the sentence with or without notice to the prisoner in case he fails to observe all the conditions of his parole and the judicial order. In construing this statute in *State* v. *Goddard*, 69 Or. 73 (133 Pac. 90, 138 Pac. 243, Ann. Cas. 1916A, 146), Mr. Chief Justice McBRIDE, speaking of a similar situation, said:

"It was made a part of the judgment, and its conditions in themselves constitute a semi-imprisonment. The defendant may not leave the jurisdiction of the court; he must report his whereabouts to the judge every month; he must submit to the judgment of the court as to his conduct; and he must obey strictly every municipal ordinance of any town in which he resides, and all these under penalty of having his parole revoked and being imprisoned for 20 years in case he violates a single one of the conditions. All these conditions constitute a very serious abridgment of the liberty of a citizen."

In *Drinkall* v. *Spiegel*, 68 Conn. 441 (36 Atl. 830, 36 L. R. A. 486), the court discussed the effect of a parole and said:

"When the plaintiff was liberated from confinement within the reformatory and found himself at large in the State of New York, he was in effect within the prison liberties. But it is the settled doctrine on this subject that the liberties of the prison are an extension or enlargement of the walls of the prison. A person, therefore, is in prison, in legal contemplation, when within the liberties of the prison. An escape from the liberties is an escape from the prison."

*Hughes* v. *Pflanz,* 138 Fed. 980 (71 C. C. A. 234), was a case where the petitioner had been convicted in Indiana of a felony and had been paroled under a statute quite similar to the Oregon enactment. He departed from Indiana and went to Kentucky where he was arrested in extradition proceedings instituted for the purpose of returning him to the former state to serve the remainder of his sentence already pronounced and upon which he had been paroled. It was held in effect that he had escaped from custody by leaving the state of Indiana in violation of his parole. Under such circumstances the convicted defendant is not a free agent to go as he pleases like he would if he had been admitted to bail. He is under the immediate restraint of the court and in its custody for all practical purposes. He is enduring compulsory expiation of an offense. In *State ex rel. Nicholson* v. *Bush,* 136 Tenn. 478 (190 S. W. 453), the petitioner was convicted of an assault with intent to commit murder and was sentenced to the penitentiary on that account. At the same term he was also convicted of the charge of carrying a pistol for which he was condemned to confinement in the county workhouse for a certain period. He was imprisoned in the penitentiary for the more serious offense and was afterwards paroled, whereupon the defendant, who was sheriff, arrested him and sought to incarcerate him in the county workhouse on the les-

ser charge. He was released on *habeas corpus* on the ground that he was still in custody under the first conviction mentioned and could not be subjected to the workhouse imprisonment.

4. Again, we remember that the government of this state is divided into three departments, the legislative, the executive and the judicial; and that neither of these has any authority to interfere with the exercise of the functions of either of the others. Specifically, the executive has no right to override or annul the action of the Circuit Court or to interfere with it in the execution of its own judgment. It is true that the Governor may pardon an offender by virtue of his constitutional power in that behalf, but even that is not effective unless it is accepted by the prisoner to whom the pardon is offered. As said by Mr. Chief Justice MARSHALL in *United States* v. *Wilson,* 7 Pet. (U. S.) 150 (8 L. Ed. 640):

"A pardon is a deed, to the validity of which, delivery is essential, and delivery is not complete, without acceptance. It may then be rejected by the person to whom it is tendered; and if it be rejected, we have discovered no power in a court to force it on him."

The doctrine of this case has never been disturbed by any ruling to which our attention has been directed. See also: "*In re De Puy,* Fed. Cas. No. 3814, 3 Ben. 307; *Michael* v. *State,* 40 Ala. 361; *Ex parte Powell,* 73 Ala. 517 (49 Am. Rep. 71); *Redd* v. *State,* 65 Ark. 475 (47 S. W. 119); *Grubb* v. *Bullock,* 44 Ga. 379; *People* v. *Potter,* 1 Park. Cr. (N. Y.) 47, 51; *Ex parte Lockhart,* 1 Disney (12 Ohio Dec. 515), 105, 108.

Carpenter's legal condition has been fixed by the judgment of the Multnomah Circuit Court. That adjudication is declared by Section 756, L. O. L., to be conclusive. It restrains the state as well as Carpenter.

He is entitled to enjoy its privileges and protection as well as to sustain its burdens and no power resides in the executive to deprive him thereof. He is not taking advantage of his own wrongs as the defendants urge. He is relying upon a judicial determination of his condition conclusive alike upon the state and its officers of whatever grade as well as upon himself. To hold otherwise would be to say that the Governor may override the decisions of the courts and interfere with their administration of justice without even resorting to the device of declaring martial law. To deny the prisoner or one petitioning for him in *habeas corpus* the right to urge this would be to deny him the equal protection of the law. It would withhold from him the advantages of the judgment in execution of which he is now held. It would be like saying to him, "You are bound by this decision of the court but the other party to it and its officers may ignore it." These principles are crystallized in the statute declaring that the person demanded cannot be delivered up until he is legally discharged from the custody of the court under which he is serving sentence. In short the executive warrant of extradition was issued not only without authority of law but also in disregard of law and is consequently void. Being void it constitutes no protection or sanction to the defendants or either of them. Under it they have no right whatever to control the movements of the prisoner. For these reasons the judgment of the Circuit Court is reversed and the cause remanded with directions to that tribunal to discharge the prisoner from the custody of the defendants.

REVERSED AND REMANDED WITH DIRECTIONS.

McCAMANT, J., Dissenting.—I think that Carpenter was not in custody within the meaning of the word

as used in Section 1874, L. O. L.   Under the parole stat-
ute, Session Laws 1911, page 152, a defendant to whom
a parole is granted is permitted "to go and remain at
large under the supervision of the court."   The ques-
tion involved in *State* v. *Goddard,* 69 Or. 73 (133 Pac.
90, 138 Pac. 243, Ann. Cas. 1916A, 146), was whether
a defendant convicted and paroled was entitled to ap-
peal from the judgment of conviction.   In the discus-
sion of this question the court used the language quoted
in the majority opinion.   The case does not hold that a
party at large on parole is in custody.   Section 1874,
L. O. L., was enacted in 1864.   The first parole statute
in this state was the act of 1905.   The legislative as-
sembly of 1864 could not foresee this later legislation
and the word "custody" as used in the act of 1864 can
only have referred to imprisonment.

In *Beard* v. *State,* 79 Ark. 293 (95 S. W. 995, 97 S. W.
667, 9 Ann. Cas. 409), the defendant had been convicted
at a special term of court.   The statute authorizing
special terms of court was as follows:

"The judge of any Circuit Court may at any time
hold a special term for the trial of persons confined in
jail, by making out a written order to that effect and
transmitting it to the clerk, who shall enter the same
on the records of the court."

The order providing for such special term directed
that it should be held "for the trial of one Govan
Beard, now held in custody, charged with a capital
offense."   The court said:

"The particular question which we have to deter-
mine is whether or not the words 'now held in custody
charged with a capital offense' necessarily mean that
the defendant was confined in jail, for under no other
construction can the order be taken as having been in
conformity with the statute.   It is not essential that the
exact words of the statute be used.   Words of like im-

port or meaning are sufficient. We think that the words used necessarily mean that the defendant was confined in jail.''

It is held that a party out on bail is not in custody: *Cozart* v. *Wolf* (Ind.), 112 N. E. 241; *Spring* v. *Dahlman,* 34 Neb. 692 (52 N. W. 567). Section 1874, L. O. L., if interpreted in accordance with the natural meaning of its language, has no application to this case.

I am also of the opinion that petitioner is in no position to raise the question determined in her favor by the majority of the court. She speaks on behalf of her husband, who has been convicted of crime against the laws of this state, and claims for him exemption from extradition because he has not yet paid the penalty due from him to the State of Oregon. Section 1874, L. O. L., is to be interpreted in the light of the object which the legislature had in view in its enactment: Endlich on the Interpretation of Statutes, § 73. In my opinion, the act was passed to guide the chief executive of the state in the performance of his duties, not to afford immunity to those who have violated the laws of other states, on the ground that they have also violated the laws of this state. If this were a controversy between the authorities of this state and those of the State of California, each contending for the possession of the prisoner, the Oregon authorities would be entitled to rely on this statute. To hold that the prisoner is entitled to urge this contention is to endow him with privilege through his own wrong. It leads to the conclusion, in my opinion untenable, that a party may successfully resist extradition by violating the laws of the jurisdiction in which he is found and rendering himself subject to punishment through its criminal processes. Under the rule announced, a defendant charged

with murder in California or Idaho, by committing a less serious offense in Oregon, might escape prosecution for the murder until the witnesses against him had scattered or died. He might do this without incurring the inconvenience of imprisonment if he could secure a parole from the trial judge.

Unless driven to the conclusion by imperative necessity, this court should not announce the rule that violators of the laws of this state may claim exemption from extradition while all others are subject thereto. The statute should be construed as one enacted to protect the state in its right to demand the penalty due for the violation of its laws. We are familiar with many statutes which are enforced only at the instance of the state. There are constitutional and statutory provisions in several of the states forbidding alien ownership of lands. It is held in these jurisdictions that a deed running to an alien passes title subject only to be defeated by direct action of the state: *American Mortgage Co.* v. *Tennille,* 87 Ga. 28 (13 S. E. 158, 12 L. R. A. 529, 530); *Williams* v. *Bennett,* 1 Tex. Civ. App. 498 (20 S. W. 856, 858, 859); *Abrams* v. *State,* 45 Wash. 327 (88 Pac. 327, 122 Am. St. Rep. 914, 13 Ann. Cas. 527, 9 L. R. A. (N. S.) 186, 190).

In this state the statutes providing the procedure for the organization of corporations are mandatory, but it is held that when the state acquiesces a failure to comply with these requirements will not prevent the organization of a *de facto* corporation: *Brown* v. *Webb,* 60 Or. 526, 530 (120 Pac. 387); *Tyree* v. *Crystal Dist. Imp. Co.,* 64 Or. 251, 254 (126 Pac. 605). Section 6717, L. O. L., provides for the dissolution of corporations which fail to file the reports and pay the fees required by law. In *Dowd* v. *American Surety Co.,* 69 Or. 418, 424 (139 Pac. 112), it is held that the surety of such de-

linquent corporation cannot plead such dissolution as a defense to an action on its obligation.

As I read the authorities thay are all to the effect that this prisoner is in no position to raise the question which is determined in his favor by the majority opinion.

In *People* v. *Hagan,* 34 Misc. 85 (69 N. Y. Supp. 475), the relator had been convicted of grand larceny and had appealed from the judgment of conviction. He was admitted to bail pending the determination of his appeal. Under these circumstances the Governor of New York honored a requisition from the Governor of New Jersey for his rendition to that state to answer an indictment found against him there. In that case, as in this case, a judgment of conviction had been entered in the asylum state; while an appeal had been taken, the presumption was that there was no error and that the judgment was correct. In that case, as in this, the party whose extradition was sought was at large; he had not paid the penalty due from him to the asylum state. The court said:

"That the state need not surrender upon requisition of another state a prisoner held in actual custody either under civil process to secure the payment of a debt, or under criminal process to answer or suffer punishment for a crime seems to be well settled. * *

"The fact that in this particular case the relator, although under conviction, is actually at large on bail, does not, in my opinion, affect the application of the rule. He still owes to this state a debt of imprisonment as a punishment for the crime against the laws of this state of which he has been convicted. He is still theoretically in the grasp and custody of the law. * * That, however, is not the precise question presented upon this application, because it is the person charged with crime, and not the state authorities, who insist that he must be kept here to answer for the crime committed in this state, and that he cannot be sent to New

Jersey to answer for the crime committed there. I do not think that he can be heard to make this objection to his extradition. If he has committed offenses against the laws of two states, it is not for him to choose in which state he shall be held to answer. Naturally he would always choose that in which the punishment would be the lighter, or the chances of conviction the least. In *Roberts* v. *Reilly,* 116 U. S. 80 (29 L. Ed. 544, 6 Sup. Ct. Rep. 291), this very question arose. Roberts, a fugitive from the State of New York, was arrested in Georgia upon an extradition warrant issued by the Governor of that state. He averred that the acts with which he was charged constituted a crime against the State of Georgia, as well as against the State of New York, and, therefore, that he should be held to answer to the laws of Georgia before he was sent out of that state to answer to the laws of another state. This contention was overruled by the Supreme Court of the United States, which held that even in such a case it was competent for the State of Georgia to waive the exercise of its jurisdiction by surrendering the fugitive to answer to the laws of New York. In the very nature of things, it is desirable that the power should rest somewhere in the state to refuse to give up a prisoner until he has satisfied the claims of the state against him or to waive the enforcement of those claims and surrender him to another state for the satisfaction of its laws. If such power did not exist, a criminal might easily evade, or postpone, his just punishment for the gravest of crimes committed in one state by the commission of a crime of much less magnitude in another.''

In substantial accord with the above case are: *Ex parte Marrin,* 164 Fed. 631, 637; *In re Fox,* 51 Fed. 427, 430–433; *Cozart* v. *Wolf* (Ind.), 112 N. E. 241; *Mackin* v. *People* (Ill.), 8 N. E. 178, 181. It is admitted that none of these cases present all the features of the case at bar, but they all announce the rule that a defendant charged with or convicted of crime cannot avail himself of the penalty due from him as a ground on which to resist extradition. I am of the opinion that in depart-

ing from this rule we are establishing a precedent which will interfere with the speedy and orderly administration of justice.

All of the contentions advanced by petitioner are, in my opinion, untenable and I think that the judgment should be affirmed.

Mr. Justice Moore concurs in this dissent.